477 A.2d 1163

Constance Yvonne GRANT, formerly Constance G. Zich

v.

Robert A. ZICH.

No. 39, Sept. Term, 1983.

Court of Appeals of Maryland.

July 13, 1984.

Motions for Reconsideration Denied
Aug. 16, 1984.

Glenn M. Cooper and Mindy G. Farber, Chevy Chase (Paley, Rothman & Cooper, Chartered, Chevy Chase, on the brief), for appellant.

Alan D. Massengill, Gaithersburg (Alan D. Massengill, P.A., Gaithersburg, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

The primary question presented by this case concerns whether a marital residence, purchased during marriage and titled as tenants by the entirety, constitutes marital property under Maryland Code (1974, 1984 Repl.Vol.) § 3–6A–01(e) of the Courts and Judicial Proceedings Article. The relevant statutory provisions are § 3–6A–01(e) and § 3–6A–05(a), (b), and (c).

Section 3–6A–01(e) provides:

"'Marital property' is *all property, however titled, acquired* by either or both spouses *during their marriage. It does not include property acquired prior to the marriage,* property acquired by inheritance or gift

from a third party, or property excluded by valid agreement *or property directly traceable to any of these sources."* (Emphasis added.)

Section 3–6A–05(a) provides in pertinent part:

"(a) In granting an absolute divorce or annulment ... *the court shall determine which property is marital property* if the division of property is an issue." (Emphasis added.)

Section 3–6A–05(b) and (c) provide:

"(b) *The court shall determine the value of all marital property.* After making the determination, *the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property,* whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

"(1) *The contributions, monetary and non-monetary, of each party to the well-being of the family;*

"(2) *The value of all property interests of each spouse;*

"(3) The economic circumstances of each spouse at the time the award is to be made;

"(4) The circumstances and facts which contributed to the estrangement of the parties;

"(5) The duration of the marriage;

"(6) The age and the physical and mental condition of the parties;

"(7) *How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;*

"(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

"(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

"(c) A monetary award made under this section may be reduced to a judgment to the extent that any part of the award is due and owing." (Emphasis added.)

In 1968, the respondent/cross-petitioner, Robert A. Zich (husband), then unmarried, purchased a house in the District of Columbia (D.C. house). In November 1971, he married the petitioner/cross-respondent, Constance Yvonne Grant (wife). In December 1971, the husband sold the D.C. house. In February 1972, the parties purchased a marital residence located in Illinois (Illinois marital residence) that was titled as tenants by the entirety. Most of the funds used to purchase the Illinois marital residence were traceable to the proceeds from the sale of the husband's D.C. house—property acquired by the husband before marriage. Some of the funds used to purchase that residence were funds acquired by the wife before marriage. Subsequent mortgage payments were made from funds acquired by the parties during the marriage that had been deposited in joint bank accounts.

In November 1975, the Illinois marital residence was sold. Proceeds from that sale were used to purchase a marital residence in Potomac, Maryland (Maryland marital residence). The Maryland marital residence was titled as tenants by the entirety. Subsequent mortgage payments were made from funds acquired by the parties during marriage that had been deposited in joint bank accounts.

Thereafter, the parties experienced marital difficulties and voluntarily separated in March 1980. At about that time, the wife removed certain personal property from the Maryland marital residence. In January 1981, the Maryland marital residence was sold and the proceeds placed in escrow.

On 28 October 1980, in the Circuit Court for Montgomery County, the husband sued for divorce. He also sought a

determination of the ownership of personal property under § 3–6A–03; [1] a determination of the ownership of real property under § 3–6A–04; [2] and a monetary award under § 3–6A–05. In her answer, the wife sought a divorce. She also sought a determination of the ownership of personal property; a determination of the ownership of real property; a monetary award; and alimony.

At trial, the wife disclaimed ownership of a part of the personal property that she had removed from the Maryland marital residence by conceding that that part belonged to the husband. Subsequent to the trial, the husband filed "Proposed Findings of Fact and Conclusions of Law" in which he stated that he was "willing to waive any interest he may have in all of the personal property [the wife] took control of."

In a written memorandum, the trial court, insofar as here relevant, initially determined the ownership of certain personal and real property. With respect to the personal

---

**1.** § 3–6A–03 provides:

"(a) When granting a limited or absolute divorce, or annulment, the court may resolve any dispute between the spouses with respect to the ownership of personal property. However, the court may not transfer the ownership of personal property from one spouse to the other.

"(b) In accordance with the court's determination of the ownership of personal property the court may:

"(1) Grant a decree which states what the ownership interest of each spouse is; and

"(2) As to any jointly owned property, order a partition or sale in lieu of partition and a division of the proceeds."

**2.** § 3–6A–04 provides:

"(a) When granting an absolute divorce or annulment, the court may resolve any dispute between the spouses with respect to the ownership of real property. However, the court may not transfer the ownership of real property from one spouse to the other.

"(b) In accordance with the court's determination of the ownership of real property, the court may:

"(1) Grant a decree which states what the ownership interest of each spouse is; and

"(2) As to any jointly owned property, order a partition or sale in lieu of partition and a division of the proceeds."

property removed by the wife from the Maryland marital residence at the time of separation, the trial court said:

"[The husband] has filed with his Proposed Findings of Fact and Conclusions of Law a suggested distribution of assets and value in which he states that he is willing to waive any interest he may have in all of the personal property [the wife] took control of except for several personal items that [the wife] now admits belong to him. This suggestion greatly simplified the otherwise item by item decision the Court would have to make and the obvious necessity to order the sale of jointly owned personal property. [The wife] obviously desired to have the personal property as evidenced by her taking possession and control of it.... The Court accepts these proposals and has considered them in the Decree entered."

With respect to the proceeds from the sale of the Maryland marital residence, the trial court said:

"[B]ecause the home from which these proceeds were derived was owned by the parties as tenants by the entirety, each party owns a one-half interest...."

The trial court then said:

"The husband has argued that he is entitled to an additional monetary award from the wife pursuant to Section 3–6A–05(b) of the Courts and Judicial Proceedings Article of the Code. After carefully considering each of the statutorily delineated factors in the context of this case, this Court is in agreement and will therefore grant the husband a monetary award as an adjustment of the equities and rights of the parties."

In determining the amount of the monetary award, the trial court considered the factors delineated in § 3–6A–05(b), including the fact "that the husband was the principal source of funds used to acquire the [Maryland marital residence], the major asset owned by the parties...." However, before determining the amount of the monetary award, the trial court did not characterize the property of the parties as either marital or nonmarital as required by

§ 3–6A–05(a). Nor did the trial court determine the value of all marital property as required by § 3–6A–05(b).

On 21 December 1981, the trial court entered an order granting the husband an absolute divorce. Among other things, the trial court awarded the wife "[t]he sole ownership of all tangible personal property in her possession ..." and "one half of the proceeds from the sale of the [Maryland marital residence] ..."; granted the husband "one half of the proceeds from the sale of the [Maryland marital residence] ..." and a monetary award in the amount of $55,000; and denied the wife an award of alimony.

On 18 January 1982, the wife appealed to the Court of Special Appeals. *Grant v. Zich,* 53 Md.App. 610, 456 A.2d 75 (1983). On 23 July 1982, before that appeal was decided, this Court decided the case of *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982). There, we explicated the three-step process to be followed when granting a monetary award pursuant to § 3–6A–05. We expressly stated that when granting such an award, the trial court is required

"to determine the extent to which the property and the marital residence are to be characterized as nonmarital or marital; to determine the value of the marital property; and to make an equitable distribution of the value of the marital property with due regard being given to all of the relevant factors." *Harper,* 294 Md. at 82, 448 A.2d at 930.

Additionally, we held that in characterizing property as nonmarital or marital under § 3–6A–05(a), "the appropriate analysis to be applied is the source of funds theory." *Harper,* 294 Md. at 80, 448 A.2d at 929.

On 3 February 1983, the Court of Special Appeals decided, among other things, that the trial court had erred in awarding all of the personal property then in the wife's possession to the wife. In reaching this result, the Court of Special Appeals said:

"Under § 3–6A–03(a) of the Courts and Judicial Proceedings Article, 'the court may not transfer the owner-

ship of personal property from one spouse to the other.'
If the court lacks this authority to transfer, *a fortiori*
such a transfer cannot be made contrary to the intent of
one of the parties. Neither could [the husband's] release
of interest in the personal property be considered a gift,
since a gift requires acceptance on the part of the donee,
*Rogers v. Rogers*, 271 Md. 603, 607, 319 A.2d 119, 121
(1974), and acceptance clearly did not occur here."
*Grant*, 53 Md.App. at 616, 456 A.2d at 78.

The Court of Special Appeals concluded that, as a result of
this error, the trial court did not properly determine "what
was marital property" or "the value of the marital proper-
ty" and was therefore "without authority to make a discre-
tionary monetary award under § 3–6A–05(b)." *Grant*, 53
Md.App. at 616, 456 A.2d at 79. Additionally, that Court
concluded that because a monetary award under § 3–6A–05
is a factor to be considered in determining whether to
award alimony,[3] the trial court's error in making its mone-
tary award required reconsideration of its denial of alimony.
*Grant*, 53 Md.App. at 618, 456 A.2d at 80.

The Court of Special Appeals vacated the trial court's
order and remanded the case so that the trial court could
determine, among other things, "what is marital property,
including appropriate components of the personal property
transferred from [the husband] to [the wife] over the lat-
ter's protest"; the value of the marital property; whether
to make a monetary award and, if so, the amount of the
award; and whether to award alimony to the wife. More

---

3. Md.Code (1957, 1981 Repl.Vol.), Art. 16, § 1 provides in pertinent
part:
   "(a) Award.—In granting a limited or absolute divorce ... the
court may award alimony to either party....
   "(b) Factors.—... [T]he award shall be in such amount or
amounts and for such period or periods of time as the court may
deem just, after it considers all relevant factors, including:
   "(1) The financial needs and resources of both parties, including:

   "(ii) Any award made under § 3–6A–05 [monetary award] ... of
the Courts and Judicial Proceedings Article...."

particularly, with respect to the Maryland marital residence, the Court of Special Appeals said:

"We also think that in making these determinations, including determinations as to the disposition of the proceeds of the [Maryland] marital home ... the chancellor should apply the 'source of funds' theory, explained in *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982). Although that case was decided after the judgment below in this one, it definitively construed the change in the law that was effected before the instant action was filed. Therefore, it is appropriate that its construction of the applicable statute be applied on remand." *Grant*, 53 Md.App. at 617, 456 A.2d at 79.

The wife filed a petition for a writ of certiorari presenting the question whether the Maryland marital residence, purchased during marriage, titled as tenants by the entirety, constitutes marital property under § 3–6A–01(e). The husband filed a cross petition presenting the questions whether personal property then in the wife's possession had been properly awarded to the wife; whether an appropriate monetary award had been made; and whether the wife had been properly denied alimony. We granted both. The judgment of the Court of Special Appeals shall be affirmed.

After careful consideration of the questions presented in the cross petition, we agree with the Court of Special Appeals that, in light of the wife's disclaimer of ownership, the trial court improperly transferred certain personal property to the wife and made an improper monetary award. As a result, it is necessary for the trial court on remand to determine the ownership of the personal property in the wife's possession; what portion of the personal property is marital property; the value of the marital property; the amount of a monetary award, if any; and whether the wife is entitled to alimony. Manifestly, in characterizing this property as nonmarital or marital, the appropriate analysis to be applied is the source of funds theory.

With respect to the question presented in the petition, the wife contends that the Maryland marital residence must be characterized as marital property. She asserts that, because the Maryland marital residence, titled as tenants by the entirety, was acquired during the marriage, it constitutes marital property within the scope of § 3–6A–01(e).

The wife further contends that the Maryland marital residence is not excluded from the statutory definition of marital property by any of the statutory exemptions. She maintains that because the Maryland marital residence was titled as tenants by the entirety, a presumption of gift arose as a result of which she, as well as her husband, acquired ownership of the Maryland marital residence in its entirety. She asserts that although gifts from third persons are exempt from the statutory definition of marital property, interspousal gifts—gifts from one spouse to another—are not.

Additionally, the wife concedes that, as a matter of fact, the Illinois marital residence was, in essence, purchased with funds directly traceable to the proceeds from the sale of the D.C. house, property acquired by the husband prior to marriage. Nevertheless, she contends that, as a result of the husband's gift to her of the Illinois marital residence, established by the presumption of gift arising from his titling of the property as tenants by the entirety, the Maryland marital residence is not, as a matter of law, directly traceable to the husband's nonmarital property. She concludes that, consequently, the Maryland marital residence is not exempt from the statutory definition of marital property.

■■■■ The husband contends that the Maryland marital residence must be characterized as part nonmarital and part marital because it was acquired by an expenditure of both nonmarital and marital property. He asserts that the Maryland marital residence was paid for in part by his nonmarital funds, namely, funds directly traceable to the sale of his D.C. house—property that he had acquired before marriage.

He concludes that under §§ 3–6A–01(e) and 3–6A–05 that portion of the property directly traceable to the contribution of his nonmarital property must be characterized as nonmarital property and that its value cannot be subject to equitable distribution. We agree.

Maryland's Property Disposition in Divorce and Annulment Act (Act), Md.Code (1974, 1984 Repl.Vol.) §§ 3–6A–01 through 3–6A–08 of the Courts and Judicial Proceedings Article became effective 1 January 1979. Since that time, this Court has considered the definition of "marital property" contained in § 3–6A–01(e) on only one occasion—the case of *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982). In that case, this Court considered the question whether real property, titled solely in a husband's name for which he paid in part before marriage and in part during marriage, constituted marital property within the scope of § 3–6A–01(e). There, we reviewed the various theories utilized by courts in other states that had considered similar questions.

In *Harper*, we expressly rejected the inception of title theory utilized by the majority of courts in community property states. Under that theory, real property, titled in one spouse and paid for by that spouse partly before marriage, is characterized as the separate property of that spouse. The community, however, is entitled to compensation in the form of an equitable lien or a right of reimbursement for the expenditure of community funds or efforts. There, we said:

"[T]he language of § 3–6A–01(e) of the Courts and Judicial Proceedings Article that ' "marital property" is all property, however titled,' expressly establishes that a *determination of what constitutes marital property under § 3–6A–05(a) is not dependent upon the legalistic concept of title.* We reject the inception of title theory employed by a majority of community property states and at least one equitable distribution state.... Thus, we effectuate our Act's purpose of 'end[ing] the inequity inherent in Maryland's old "title" system of dealing with the marital property of divorcing spouses.'

Report of The Governor's Comm'n on Domestic Relations Laws, at 1 (1982)." *Harper*, 294 Md. at 78–79, 448 A.2d at 928 (emphasis added).

Additionally, we expressly rejected the transmutation of property theory utilized by the Supreme Court of Illinois in that equitable distribution state. Under that theory, where there has been a contribution of marital property to nonmarital property, a rebuttable presumption arises that the owner of the nonmarital property intended that the commingled property be treated as marital. Consequently, the entire property is transmuted to marital property regardless of the status of title. More particularly, in *Harper*, we said:

"Unlike the Illinois court, *we are not persuaded that either the statutory scheme embodied in our Act or its express requirement* that the trial court consider the monetary and nonmonetary contributions of each spouse, the value of the property interests of each spouse, and the effort expended by each spouse in accumulating the marital property *indicates a legislative preference for the classification of property as marital.* Indeed, *the language of § 3–6A–01(e)*, which sets forth an exclusive list of nonmarital property, *indicates a legislative intent that the value of certain property not be subject to equitable distribution,* and that the interests of spouses making nonmonetary contributions be protected without depriving the other spouse of nonmarital property. *To permit nonmarital property to be 'transmuted' into marital property* and, therefore, to be subject to equitable distribution *deprives a spouse of nonmarital property and is, therefore, contrary to that legislative intent."*
*Harper*, 294 Md. at 79–80, 448 A.2d at 929 (emphasis added).

In *Harper*, we concluded that under the Act, the appropriate analysis to be used was the source of funds theory, then utilized in at least one community property state—California, and in one equitable distribution state—Maine. Under that theory, when property is acquired by an expendi-

ture of both nonmarital and marital property, the property is characterized as part nonmarital and part marital, regardless of how titled. The property is nonmarital in the ratio that the nonmarital investment in the property bears to the total nonmarital and marital investment in the property, and its value is not subject to equitable distribution. More particularly, in *Harper*, we said:

"We recognize that in order to apply the source of funds theory in Maryland, *it is necessary to adopt*, as did the Supreme Judicial Court of Maine, *an interpretation that defines the term 'acquired,' appearing in § 3–6A–01(e), as the on-going process of making payment for property.... Under this definition, characterization of property as nonmarital or marital depends upon the source of each contribution as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained.*

"The utilization of this definition of the term 'acquired,' coupled with the application of the source of funds theory, produces a result that comports with both the language and the purpose of the Maryland Act.

. . . . .

Because the definition of the term 'acquired' and the application of the source of funds theory produces results consonant with the statutory scheme embodied in the Maryland Act, we believe it best effectuates the broad remedial purpose of the Act 'to adjust the property interests of spouses fairly and equitably ... and to give careful consideration to both monetary and nonmonetary contributions by the spouses.' *Bender [v. Bender]*, 282 Md. [525] at 535 n. 7, 386 A.2d [772] at 778 n. 7 [ (1978) ] ". *Harper*, 294 Md. at 80–81, 448 A.2d at 929–30 (emphasis added).

In short, in *Harper*, this Court established certain fundamental principles. Under the Act, a determination of what constitutes marital property for the purpose of granting a monetary award is not dependent upon the legalistic con-

cept of title. The characterization of property as nonmari-tal or marital depends upon the source of the contributions as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained. Finally, there is no legislative preference for the classification of property as marital; rather, the General Assembly intended that certain property not be subject to equitable distribution.

■ In *Harper*, this Court's consideration of the definition of marital property under § 3–6A–01(e) was confined to property titled solely in one spouse. Here, the question concerns the definition of that term with respect to property titled as tenants by the entirety. Under Maryland's common law, when a spouse titles property as tenants by the entirety, a presumption of gift to the other spouse arises, *Klavans v. Klavans*, 275 Md. 423, 427, 431, 341 A.2d 411, 413–14, 416 (1975); *Anderson v. Anderson*, 215 Md. 483, 488–89, 138 A.2d 880, 883 (1958); *Lewis v. Lewis*, 140 Md. 524, 527, 118 A. 65, 66 (1922), and upon dissolution of the marriage, one-half of the property constitutes the donee spouse's separate property, *Meyers v. East End Loan & Savings Association*, 139 Md. 607, 614, 116 A. 453, 456 (1922); *Reed v. Reed*, 109 Md. 690, 696, 72 A. 414, 416 (1909). Thus, the question here is whether, when characterizing property as nonmarital or marital under § 3–6A–01(e) for the purpose of granting a monetary award under § 3–6A–05(b), a presumption of gift arises from the titling of property as tenants by the entirety.

Notwithstanding that *Harper* concerned the status of property titled solely in one spouse, we find the principles enunciated in *Harper* to be dispositive here. To characterize property as marital, based upon a presumption of gift arising from the titling of property as tenants by the entirety, makes the characterization of of property as marital dependent, not only upon the legalistic concept of title, but also upon the time at which title is obtained, rather than the time at which payments are made. To employ a pre-

sumption of gift based upon the titling of property as tenants by the entirety, rather than making a determination as to the source of funds used by the spouses to acquire the property, is to create a preference for the classification of property as marital and, therefore, subject to equitable distribution. For these reasons, a presumption of gift based upon the titling of property as tenants by the entirety when characterizing property as marital or nonmarital under § 3–6A–01(e) is not consonant with the legislative policies embodied in the Act. Accordingly, we now hold that when characterizing property as marital or nonmarital under § 3–6A–05(a) for the purpose of granting a monetary award under § 3–6A–05(b), a presumption of gift does not arise from the titling of property as tenants by the entirety.[4] Rather, in characterizing property as marital or non-

---

**4.** There is no merit to the wife's contention that this holding is contrary to the holdings in previous cases decided by this Court and the Court of Special Appeals. In *Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982), this Court considered the question whether a presumption of gift arises when, after a separation, one spouse pays the carrying costs of a marital residence owned by both as tenants by the entirety. In *Bledsoe v. Bledsoe,* 294 Md. 183, 448 A.2d 353 (1982), the question presented was whether real property purchased by one spouse prior to marriage, but subsequently titled as tenants by the entirety, constituted a "family home" within the statutory definition contained in § 3–6A–01(b). In *Brodak v. Brodak,* 294 Md. 10, 447 A.2d 847 (1982), this Court considered the question whether the trial court's finding of fact with respect to whether certain personal property was directly traceable to a gift from a third party was clearly erroneous. In none of these cases did this Court consider or determine a question concerning the characterization of property as nonmarital or marital under § 3–6A–01(e) for the purpose of granting a monetary award under § 3–6A–05(b).

We note that the use of a presumption of gift arising from the titling of property as tenants by the entirety remains appropriate in circumstances other than those in which property is being characterized as nonmarital or marital under § 3–6A–01(e) for the purpose of granting a monetary award under § 3–6A–05(b). *See Bledsoe,* 294 Md. at 186–87, 448 A.2d at 355; *Crawford,* 293 Md. at 314, 443 A.2d at 603.

In *Ayars v. Ayars,* 50 Md.App. 93, 436 A.2d 490 (1981), the Court of Special Appeals determined only that the trial court erred in its division of the real property of the parties under § 3–6A–04. In dicta, that Court indicated that when property is titled as tenants by the entirety, a presumption of gift arises and the property should be

marital under § 3–6A–05(a), the appropriate analysis to be applied is the source of funds theory enunciated in *Harper.*

In reaching this result, we recognize that to date North Carolina is the only equitable distribution state in which the Supreme Court has indicated that when characterizing property as nonmarital or marital for the purpose of equitable distribution, a presumption of gift does not arise from the titling of property as tenants by the entirety. *See Mims v. Mims,* 305 N.C. 41, 286 S.E.2d 779, 787 (1982). Courts in other equitable distribution states that have considered similar questions have, for a variety of reasons, determined that a presumption of gift arises from the titling of property as tenants by the entirety. The presumption is that the gift is to the marital unit and, therefore, the property is marital property subject to equitable distribution. *E.g., In re Marriage of Moncrief,* 36 Colo.App. 140, 141–42, 535 P.2d 1137, 1138 (1975); *Turpin v. Turpin,* 403 A.2d 1144, 1146 (D.C.1979); *In re Marriage of Rogers,* 85 Ill.2d 217, 222–23, 52 Ill.Dec. 633, 636, 422 N.E.2d 635, 638 (1981); *In re Marriage of Butler,* 346 N.W.2d 45, 47 (Iowa Ct.App. 1984); *Carter v. Carter,* 419 A.2d 1018, 1022 (Me.1980); *Conrad v. Bowers,* 533 S.W.2d 614, 624 (Mo.Ct.App.1975); *Pascarella v. Pascarella,* 165 N.J.Super. 558, 564, 398 A.2d 921, 924 (1979). We do not find this authority persuasive.

Initially, we note that, with the exception of Maine, courts in these equitable distribution states do not apply the *Harper* source of funds theory, even when considering the definition of marital property with respect to property titled solely in one spouse. *E.g., In re Marriage of Lee,* 87 Ill.2d 64, 66–67, 58 Ill.Dec. 779, 780–81, 430 N.E.2d 1030, 1031–32 (1981); *Whitenton v. Whitenton,* 659 S.W.2d 542, 547–48 (Mo.Ct.App.1983). *Contra, Hall v. Hall,* 462 A.2d 1179,

---

classified as "marital property" under § 3–6A–01(e). *Ayars,* 50 Md. App. at 96, 436 A.2d at 492. We note that *Ayars* was decided before our decision in *Harper* which enunciated the source of funds theory.

1181–82 (Me.1983).[5] Moreover, there are significant differences between Maryland's Act and the applicable statutes in all but one of these equitable distribution states.[6] Additionally, the underlying rationale of all of the cases that hold that the titling of property by a spouse as tenants by the entirety raises a presumption of gift to the marital unit deviates from the common law and is, in essence, the doctrine of transmutation, a doctrine expressly rejected in *Harper*.[7] Kalcheim, *Intention Controls: The Theory of*

---

**5.** We note that in Maine, although the source of funds theory is applied when characterizing property titled solely in one spouse as nonmarital or marital, *Hall*, 462 A.2d at 1181–82, it is not applied when characterizing property titled as tenants by the entirety, *Carter*, 419 A.2d at 1022. Manifestly, in Maine, the theory employed in characterizing property as nonmarital or marital is dependent upon title. We reject this inconsistent approach because it is contrary to the intent of the Maryland General Assembly that a determination of what constitutes marital property is not dependent upon the legalistic concept of title.

**6.** We note that in two such states, although property acquired by gift or inheritance is exempt from the definition of marital property, there is no exemption for property acquired in exchange for or traceable to property acquired before marriage. Iowa Code Ann. § 598.21(1) (West 1981); N.J.Stat.Ann. § 2A:34–23 (West Supp.1983–84). Additionally, unlike the Maryland Act, the applicable statutes in four of these equitable distribution states expressly provide that all property acquired by either spouse subsequent to marriage is presumed to be marital property when title is held as tenants by the entirety. Colo. Rev.Stat. § 14–10–113(3) (1974); Ill.Ann.Stat. Ch. 40, § 503(b) (Smith-Hurd Supp.1983–84); Me.Rev.Stat.Ann.Tit. 19, § 722–A(3) (1981); Mo. Ann.Stat. § 452.330(3) (Vernon Supp.1984).

**7.** A transmutation of separate property into marital property occurs when a presumption of gift to the marital estate is utilized because such a presumption deviates from the common law presumption upon which it is premised. Under the common law, the titling of property by a spouse as tenants by the entirety raises a presumption that a gift of the property has been made to the other spouse, one-half of which, upon the dissolution of marriage, constitutes that spouse's separate property. By employing a presumption of gift to the marital unit, property that would, under the common law, be classified upon the dissolution of marriage as the separate property of each spouse is transmuted into marital property subject to equitable distribution.

The transmutation resulting from the presumption of gift to the marital unit is extensively described by Professor Joan M. Krauskopf in her article entitled *Marital Property at Marriage Dissolution*, 43

274

*Transmutation—the Effect of Placing Property Which Was Initially Non-Marital into Joint Tenancy; the Theory of Commingling—the Effect of Intermingling Marital and Non-Marital Funds,* 68 Ill.B.J. 320, 321 (1980); Krauskopf, *Marital Property at Marriage Dissolution,* 43 Mo.L. Rev. 157, 190–91 (1978).

■ Having determined that a presumption of gift arising from the titling of property as tenants by the entirety is not consonant with the policy of Maryland's Act, we shall apply the source of funds theory to the instant case. Here there was evidence to show that the husband, when unmarried, purchased a D.C. house. After marriage, he sold the D.C. house. An Illinois marital residence, titled as tenants by

Mo.L.Rev. 157, 190–92 (1978). There in analyzing the germinal case of *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App.1975), she said:

"In *Conrad v. Bowers* property which had been owned by the husband prior to the marriage was sold and the proceeds used to purchase the Elmhurst property. Application of the statutory language would result in an immediate presumption that the property was marital because acquired during marriage. A reclassification as separate would occur when it was shown that the source of the funds used to buy it was separate property. However, the Elmhurst property was titled in the joint names of the husband and wife. The court held that the effect of doing so was to make the property marital for purposes of division at marriage dissolution. [T]he majority had to deal with the common law presumption, long recognized in Missouri, that when one marital partner titles property in the names of both, he intends a gift to or settlement upon the other.... The court assumed without discussion that such titling would result in a 'contribution to or gift to the marital estate' rather than an individual gift of one-half the property as separate property to the other spouse.

"The *Conrad* decision is of inestimable importance in Missouri because, without specific statutory authorization, it establishes the principle that 'transmutation' of the character of the property for purposes of division at dissolution is possible. In community property states the term 'transmutation' means a change in the character of the property from either separate to marital or from marital to separate due to the intent of the parties.... The *Conrad* decision establishes for Missouri the precedent that a *documentary* transaction can transmute otherwise separate property to marital property because it evidences an *intent* to do so." (Footnotes omitted) (emphasis in original).

the entirety, was purchased.   Most of the funds used to purchase that residence were the husband's nonmarital property—funds concededly traceable to the proceeds from the sale of the D.C. house, property acquired by him before marriage.   Some of the funds used were the wife's nonmarital property—funds acquired by her before marriage.   Subsequent mortgage payments were made from marital property—funds acquired by the parties during marriage. Thereafter, the Illinois marital residence was sold and the proceeds, including the parties' nonmarital funds, were used to purchase a Maryland marital residence titled as tenants by the entirety.   Subsequent mortgage payments were made from marital property—funds acquired by the parties during marriage.   After the parties separated, the Maryland marital residence was sold and the proceeds placed in escrow.

Under our holding, when characterizing property for the purpose of making a monetary award under § 3–6A–05, a presumption of gift does not arise from the titling of either the Illinois or the Maryland marital residence as tenants by the entirety.   In the absence of such a presumption, the spouse claiming a gift has the burden of producing evidence and proving that a gift was, in fact, made.   Here the record shows that there was no evidence presented to establish that at the time of the purchase of either the Illinois or the Maryland marital residence, the husband intended to make a gift of the proceeds from the sale of the D.C. house to the wife.[8]

In sum, in the absence of a presumption of gift, the record here shows nothing more than that the Maryland marital residence was property that was paid for in part by the husband's nonmarital funds—funds that were directly traceable to the proceeds of the sale of the D.C. house; in

---

8.   In the absence of evidence to show that there was a gift from the husband to the wife, we need not here consider the wife's contention that the Maryland marital residence was not exempt from the definition of marital property because it was an interspousal gift, not a gift from a third party.

part by the wife's nonmarital funds—funds acquired by her prior to marriage; and in part by marital funds—funds acquired by the parties during marriage. Because the Maryland marital residence was acquired by an expenditure of both nonmarital and marital property, it must be characterized as part nonmarital and part marital, notwithstanding its titling as tenants by the entirety.

Under the present circumstances, on remand, it is necessary for the trial court, in determining whether to make a monetary award, to apply the source of funds theory not only to the personal property, but also to the Maryland marital residence. Thus, on remand, the trial court must determine the source of funds contributed to the Maryland marital residence by each of the spouses and the marital unit; the extent to which the Maryland marital residence is to be characterized as nonmarital property or marital property; and the value of the marital property.[9]

---

**9.** For guidance, we shall reiterate certain principles enunciated in *Harper* governing the method of calculating nonmarital and marital interests and the value of marital property. Property is nonmarital in the ratio that the nonmarital investment bears to the total nonmarital and marital investment in the property. To the extent that property is nonmarital, its value is not subject to equitable distribution. Property is marital in the ratio that the marital investment bears to the total nonmarital and marital investment in the property. To the extent that the property is marital, its value is subject to equitable distribution.

The following example illustrates the proper application of these principles. A husband and wife acquired real property for a purchase price of $40,000. The wife contributed a down payment of $10,000 from property that she acquired prior to marriage. The remaining $30,000 was financed by a mortgage signed by both the husband and the wife. One-quarter of the value of the property is the wife's nonmarital property and three-quarters of the value of the property is marital property.

If, at the time of the dissolution of the marriage, the property has appreciated in value to a fair market value of $60,000 and the mortgage indebtedness has been reduced to $20,000 by the payment of $10,000 of marital funds, the following division would be appropriate. One-quarter of the $60,000 fair market value of the property, or $15,000, would be the wife's nonmarital property, not subject to equitable distribution. From the remaining $45,000, $20,000, representing the unpaid mortgage balance, would be deducted leaving

If a monetary award is to be granted, the trial court must make an equitable distribution of both the personal and real marital property with due regard being given to all of the relevant factors. Additionally, the trial court must determine whether the wife is entitled to alimony.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE EQUALLY DIVIDED.

$25,000 as the net value of the marital property subject to equitable distribution.