594 A.2d 1200

**Riccardo PARADISO**

v.

**Chantal A. PARADISO.**

**No. 1647, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Sept. 6, 1991.

344

Harvey S. Wasserman (Joel L. Katz, P.A., on the brief), Annapolis, for appellant.

Stephen J. Britz, Annapolis, for appellee.

Argued before BISHOP, ROSALYN B. BELL and CATHELL, JJ.

CATHELL, Judge.

Riccardo Paradiso appeals from a judgment of the Circuit Court for Anne Arundel County which granted an absolute divorce to Chantal A. Paradiso. In addition to the divorce, the trial court granted appellee custody of and support for the minor children, exclusive use and possession of the family home and family use property, and a monetary award in the amount of $117,300. Alleging error in the judgment as to the monetary award, Mr. Paradiso raises these questions:

1. Whether the trial court abused its discretion in granting Appellee a monetary award?
2. Whether the trial court erred in calculating the amount of the monetary award granted Appellee? [1]

Because we believe the trial judge failed to classify what is marital property and to follow the established guidelines in

---

1. Appellant also raises a third question: "Whether the trial court erred in not striking from Appellee's Complaint the allegation that Appellant engaged in unwanted touchings with his minor daughter"? We shall not review this question, as it has no bearing on the outcome of this appeal.

determining whether a monetary award is appropriate, we shall reverse and remand.

## Facts

The parties were married on February 21, 1976. During their marriage, they gave birth to two children: Andrea and Nina, who were born on August 9, 1977 and May 3, 1980, respectively.

Mr. Paradiso was employed in the large appliance/electronics industry until 1987, from which he earned approximately $25,000 to $30,000 per year. During his employment he also earned, through various sales contests and promotions, home appliances which were used for family purposes. Mr. Paradiso owned a nonmarital real property in Italy, which he sold in 1978 for approximately $40,000. He used the proceeds for "family use" purposes.

Mrs. Paradiso, at the time of the marriage, was a school teacher earning approximately $12,000 per year. Several months into the marriage, she quit. In 1979, she went to work for her family business, the Dittmar Corporation (Dittmar). She worked two days per week and earned anywhere from a low of $5,000 per year, when she first started, to a high of $11,000 per year at the time of the divorce.

In 1976, the parties purchased an unimproved building lot for $45,000, exclusively paid for with Mrs. Paradiso's undisputed nonmarital funds. The parties' home was built on the lot for $77,500.[2] The cost of building the home was financed by a deed of trust dated July 31, 1978, $30,000 of which was later forgiven by Mrs. Paradiso's mother, thereafter leaving a net face value of the mortgage on the home of $47,500. By the time of trial, the principal balance had been reduced to approximately $36,860. According to an appraisal obtained jointly by the parties, the real property

---

**2.** There is a conflict in the record as to the exact cost. As we decipher it, it was $77,500.

was valued at $530,000—$350,000 for the land and $180,000 for the improvements thereon.

In 1986, Mrs. Paradiso's stepfather died. She inherited, through the operation of a trust, an ownership interest in various large residential condominium/apartment complexes developed, owned, and maintained by Dittmar. According to Mrs. Paradiso, her interest in the business was valued at two million dollars. As profits realized from her interest in the business, she received approximately $80,000 to $90,000 per year. The two Paradiso children also inherited trust interests established by her stepfather, which produced $30,000 per year.

The parties' relationship started to deteriorate after Mrs. Paradiso's inheritance. In light of Mrs. Paradiso's increased income, the parties attempted to go into business on their own. Mr. Paradiso quit his job in appliance sales, and the parties went into a partnership with another individual in the home building industry. The business, however, proved to be a failure after a year or so.

The parties then attempted another business venture, involving exclusive marketing rights to a patented, wooden folding chair. As before, Mr. Paradiso worked full-time at this new business. The marketing business was also unsuccessful. Mr. Paradiso then began looking for employment, and eventually, at the time of trial, was working for Circuit City, selling large appliances and earning approximately $25,000 per year. From 1986 to 1988, Mr. Paradiso's income to the family was insignificant: in 1986, he received $4,095 from unemployment compensation; in 1987, he earned $2,385; in 1988 none; and in 1989, approximately $2,200. Further, he was unemployed from July 1987 through March 1989.

After Mrs. Paradiso received her inheritance, she began to receive psychological counselling on a regular basis; she testified at trial that she began paying more attention to herself and less to Mr. Paradiso, and that his behavior

throughout the marriage now became a major problem for her.

Mr. Paradiso testified that normal sexual relations ended in the spring of 1987 and that Mrs. Paradiso began to talk of divorce in the fall of 1987. In the spring or summer of 1988, Mr. Paradiso began an extramarital relationship which continued through April of 1990. Upon discovery of her husband's relationship, Mrs. Paradiso filed for divorce in April of 1989.

### Monetary Award

The relevant law is contained in Fam.Law Code Ann. §§ 8–201 to –213,[3] otherwise known as "The Marital Property Act" (Act). One of the remedial purposes of granting a monetary award is to protect the interests of spouses who make nonmonetary contributions to the marriage; that is, to end the "inequity inherent in Maryland's old 'title' system of dealing with the marital property of divorcing spouses." *Harper v. Harper*, 294 Md. 54, 63, 448 A.2d 916 (1982) (quoting Report of The Governor's Comm'n on Domestic Relations Laws, at 1 (1982)). The preamble to the Act, in relevant part, states:

> The General Assembly declares further that it is the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family, and further, that if there are minor children in the family their interests must be given particular and favorable attention.

1978 Md.Laws, ch. 794 at 2305 (Preamble). To achieve this broad remedial purpose, the Court of Appeals has held that the Act should be liberally construed. *Harper*, 294 Md. at

---

**3.** These provisions were formerly found in Cts. & Jud.Proc.Code Ann. §§ 3–6A–01 to –07, under the subtitle, "Property Disposition in Divorce and Annulment Act."

64, 448 A.2d 916. *See also Deering v. Deering,* 292 Md. 115, 128, 437 A.2d 883 (1981); *Keesling v. State,* 288 Md. 579, 589, 420 A.2d 261 (1980); *James v. Prince George's County,* 288 Md. 315, 335, 418 A.2d 1173 (1980) (remedial statutes to be liberally construed).

The late Judge Davidson, for the Court, in *Harper v. Harper,* 294 Md. 54, 64, 448 A.2d 916 (1981), after discussing at length the purposes of the act, concluded, "Here we shall construe the Act broadly with respect to whether real property, paid for in part before marriage and in part during marriage, as well as a marital residence constructed upon that real property during marriage, constituted marital property." The court rejected the "inception of title theory" then espoused in several states and adopted for Maryland the "source of funding" theory then applied in California. The source of funds theory remains the law in Maryland. *See Pope v. Pope,* 322 Md. 277, 587 A.2d 481 (1991). The *Harper* court, however, rejected any legislatively created "preference" for marital as opposed to non-marital classification: "[W]e are not persuaded that ... our Act ... indicates a legislative preference for the classification of property as marital." *Id.* 294 Md. at 79, 448 A.2d 916. The Court then said, at 80, 448 A.2d 916: "We recognize that in order to apply the source of funds theory in Maryland, it is necessary to adopt ... an interpretation that defines the term 'acquired' ... as the on-going process of making payment for property...." As we shall later see, in the present case we are concerned, in part, with a unique payment process—a payment by way of debt forgiveness to the marital unit during the marriage.

■ We shall first briefly discuss the mechanics of granting a monetary award. The Act requires that, before a monetary award is granted, the following three-step process occur: (1) If an equitable adjustment over and above the distribution of the spouse's property in accordance with its title is an issue, the court shall determine which property is marital property, Md.Fam.Law Code Ann. § 8–203 (1984 & Supp.1990); (2) the court shall then determine the value of

all marital property, § 8–204; and finally, (3) the court may make a monetary award as an adjustment of the parties' equities and rights "concerning marital property whether or not alimony is awarded," § 8–205.

If an award is deemed appropriate, the court then must consider each of the ten factors enumerated in section 8–205. *Harper,* 294 Md. at 79, 448 A.2d 916; *Wilen v. Wilen,* 61 Md.App. 337, 355, 486 A.2d 775 (1985); *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982). *See also Quinn v. Quinn,* 83 Md.App. 460, 464, 575 A.2d 764 (1990); *Melrod v. Melrod,* 83 Md.App. 180, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990).

■ Turning to the case at bar, we see that the trial court failed to follow these statutory guidelines. The court stated, with regard to the granting of the monetary award, that:

> [T]he major if not only serious matter here is the marital home that certainly by all stretch of the imagination was built and paid for largely through the efforts of Mrs. Paradiso's financing. There is no question that he has made some non economic contributions to the home in the course of the twelve years they've been there, but if you actually look at what has been paid on the mortgage or the deed of trust, it has only been reduced about ten thousand six hundred dollars ... *if you don't count the forgiven thirty thousand dollars that Mrs. Paradiso's mother forgave her and the repayment of her share of this mortgage,* so there hasn't been an awful lot of payment on principal over this twelve year period, but there have been expenses and improvements, and I suppose, other factors that come in. But I think Mr. Britz' analysis of the way in which that can better be handled is the appropriate way to go about it. I didn't really get a chance to confirm all his numbers but the logic sounded correct, and I think that when you ... if in fact those numbers prove to be accurate, I think a hundred and seventeen thousand three hundred marital award to the

wife would offset what he doesn't deserve from the nonmarital contributions.... [Emphasis added.]

As the appellant points out, the trial court focused its attention only on the marital home; no other property was taken into consideration in the granting of the monetary award. Even in focusing on the family home, the court, he alleges, failed to consider properly the forgiveness of the parties' indebtedness by appellee's mother. He further alleges that the court never made a determination as to the status of other properties as required by the Act.

### 1. *Home Furnishings*

█ Appellant specifically brings to our attention the status of the family use furnishings. There was testimony as to the value of those furnishings; however, the trial court never made a determination as to their status. The record reveals the following colloquy:

[Appellant's counsel]: Again, without detailing it, can you tell the court what the approximate value is of the furnishings in the house that were purchased during the marriage with funds acquired during the marriage?

[Appellee's counsel]: Your Honor, again, on relevance ... I don't think there is any issue about the furnishings in the house being marital property.

[Appellant's counsel]: The court certainly needs a value for those furnishings, if you're seeking a monetary award ... and she's going to be keeping the stuff for three years.

[Appellee's counsel]: Well, if he's qualified to explain what the value is, certainly I'll agree to it.

COURT: Go ahead.

[Appellant's counsel]: Can you just tell us what you believe the stuff is worth, Ricardo [sic]?

[Appellee's counsel]: I'm going to object without a basis, Your Honor.

COURT: Well, it's going to require more than just a guess.

[Appellant's counsel]: Let me ask you this ...

COURT: He can evaluate it.

[Appellant's counsel]: ... Ricardo [sic] ... in your wife's answers to interrogatories she indicates that the approximate value of the furniture in the home is fifteen thousand dollars. Do you agree with that or disagree with that?

[Mr. Paradiso]: That's about right. You were speaking of marital property?

[Appellant's counsel]: Yes....

It is clear from the preceding colloquy that the issues concerning the status and value of the home furnishings were presented to the court. Mr. Paradiso and his counsel seem to indicate that the furnishings were marital property; the trial court, however, never determined whether those furnishings were, in fact, marital or not. Furthermore, the value of those furnishings was not expressly determined by the court. Even if the court had believed Mr. Paradiso and determined that the furnishings were marital property, it erred by not including them in the calculation process. *See Holston v. Holston,* 58 Md.App. 308, 319, 473 A.2d 459 (1984) (chancellor's failure to include certain items of property in his listing of marital property and, therefore, failing to consider the value of those items, resulted in vacation of the monetary award).

Thus, on remand, the trial court must determine the precise status and value of the furnishings. If it determines them to be marital property, it must consider them in the calculation of the monetary award.[4]

## 2. *Forgiveness of Debt*

As we have said, another issue before the trial court was the $30,000 mortgage debt forgiven by Mrs. Paradiso's mother. Appellant argues that the forgiveness was a gift

---

4. We note the court's use and possession order was dated August 1, 1990, but stated that the three-year use and possession period was for three years "commencing on or before August 14, 1990, the date by which the Defendant is to remove himself, his personal effects" and certain items of furniture.

to both spouses. He contends that if it is marital property, then it should have been included in calculating the percentage of marital versus nonmarital funds contributed toward the family home; if not, it should still have been used and computed on the nonmarital contribution side of the equation with half of the $30,000 being designated as his nonmarital contribution. The trial court never decided whether this forgiveness was marital "property" or not; it was not included in its calculation.

We were faced with a somewhat similar situation in *Quinn v. Quinn,* 83 Md.App. 460, 575 A.2d 764 (1990), where the husband's mother had lent the parties money to purchase their first home. We said, "Inasmuch as the parties agree that the loan was made to both of them, and was used in purchasing their first home, the obligation to repay the loan was a marital debt. Consequently, the net value of the marital property must be reduced by the amount of the marital debt." *Id.* at 468, 575 A.2d 764 (citations omitted). It necessarily follows that if the imposition of marital debt reduces the value of the marital property, a forgiveness of that debt would increase the value of that marital property. *See also Zandford v. Wiens,* 314 Md. 102, 549 A.2d 13 (1988); *Rogers v. Rogers,* 80 Md.App. 575, 565 A.2d 361 (1989).

The Court of Appeals in *Schweizer v. Schweizer,* 301 Md. 626, 636–37, 484 A.2d 267 (1984), defined a marital debt as "a debt which is directly traceable to the acquisition of marital property ... that part of marital property which is represented by an *outstanding* marital debt has not been 'acquired' for the purpose of an equitable distribution by way of a monetary award. Therefore, the value of that marital property is adjusted downward by the amount of the marital debt." It thus logically follows that when an outstanding marital debt is no longer outstanding by virtue of payment, gift and/or debt forgiveness, the marital property previously encumbered by the debt "acquires" that value and must be adjusted upward.

In the case at bar, the trial court accepted appellee's computation of $47,500 as the net cost to the parties of house construction, adjusting downwards the cost of construction by the $30,000 marital debt, the repayment of which had been forgiven. Regardless of whether the debt was outstanding, the downward valuation would not have been appropriate as we start with the cost as a base. The amount that has been forgiven as a debt comes into play at this point only in determining whether that portion is marital or nonmarital. The marital portion percentage computation should have begun with $77,500/$122,500 = 63.27%[5] instead of $48,500/$91,500 = 52.43%.[6] The nonmarital percentage would be adjusted accordingly.

The relevant law in determining whether a property is marital, based on acquisition of property as a gift from a third party, was most recently discussed by the Court of Appeals in *Pope v. Pope*, 322 Md. 277, 587 A.2d 481 (1991). The factual scenario of *Pope* was considerably different from the facts in the case at bar. In *Pope*, the evidence clearly indicated that the father had decided to make a gift of his home to his two sons—Robert and Tommy. Robert and his wife, Debra, wanted to live in the home; Tommy wanted his share of the home in cash. The value of the home as appraised was $32,000. Robert and Debra took a

---

**5.** Interestingly, in this case the evidence adduced separate costs of the real estate and construction of the building and separate evaluations of the real estate and improvements at the date of divorce. Since the issue was never raised below, we do not reach the issue of whether for purposes of determining the nonmarital interest the real estate and building could have been treated separately, *i.e.*, her $45,000 for the real estate is now worth $350,000, while the $77,500 for the house is now worth $180,000, less the debt of $36,862.46. Also, as it was not raised below, we do not reach the issue of whether the family of Mrs. Paradiso made an additional gift to Mrs Paradiso or the marital unit as a result of constructing the building "at cost."

**6.** The figure $48,500 was utilized by Mrs. Paradiso in the computations adopted by the court. This apparently stemmed from a contention that $1,000 of the $45,000 land cost came from joint property. That point was apparently conceded prior to the hearing on appeal. The trial court utilized appellee's figures. Our modifications are based on those figures.

mortgage on the home for $16,000 in order to generate the funds necessary to effectuate the father's gift to Tommy. A deed was then executed, conveying the home from the father to Robert and Debra as tenants by the entireties. In 1989, Robert and Debra were divorced. The trial court awarded Robert use and possession of the marital home for three years; ordered that the home be sold, and the net proceeds to be divided equally between the parties; and denied Robert's request for a monetary award. On the issue of whether Robert's $16,000 gift from his father was marital property, the trial court held that it was. We affirmed. The Court of Appeals reversed, holding that the method of titling did not create a gift to the wife.

In so holding, that Court stressed that "the appropriate analysis to be applied in characterizing property as nonmarital or marital is the source of funds theory," *Pope*, 322 Md. at 282, 587 A.2d 481 (citing *Grant v. Zich*, 300 Md. 256, 263–65, 477 A.2d 1163, aff'd, 300 Md. 256 (1984)); that "a determination of what constitutes marital property for the purpose of granting a monetary award is not dependent upon the legalistic concept of title," *Pope*, 322 Md. at 282, 587 A.2d 481 (quoting *Zanford v. Wiens*, 314 Md. 102, 109, 549 A.2d 13 (1988)); and that "a presumption of gift does not arise from the titling of property as tenants by the entirety." [7] *Pope*, 322 Md. at 282, 587 A.2d 481 (quoting *Zanford*, 314 Md. at 109, 549 A.2d 13). The Court then held that Debra failed to establish every element of a gift by clear and convincing evidence. *See Dorsey v. Dorsey*, 302 Md. 312, 318, 487 A.2d 1181 (1985).

Because the Act, while providing for a monetary award, expressly forbids the transference of property, the *Pope* Court could not have meant that the trial or appellate

---

7. We presume that the Court of Appeals, in stating that a presumption of gift does not arise from the titling of property as tenants by the entireties, meant to limit that *Pope* holding to instances where marital property determinations were at issue. As we understand the law, presumptions of gift from such titling can be created in other circumstances.

courts possess the power to establish ownership percentage interests in property contrary to the manner in which that property is titled under the traditional legal concept of property, in spite of that Court's language that such legalized concepts of title are "outlawed." Therefore, we shall consider the source of funds theory, and the holding of *Pope,* to require their application in a calculation for monetary award purposes only.

In *Pope,* there was clear and convincing evidence that the father had intended to make a gift to his son Robert. Rather than holding that such evidence rebutted any inference or presumption of gift extant because of the conveyance and titling of the property as tenants by the entireties, that Court held that such titling did not create any presumption of gift.

There is no question but that, in the present case, the appellee's mother made a gift—she forgave a $30,000 indebtedness owed jointly by appellant and appellee. That indebtedness was originally incurred for the purpose of constructing the marital home which is conceded to be marital property and is titled as tenants by the entireties. Unlike *Pope,* in this case there is no clear and convincing evidence, and, in fact, no evidence, of the donor's intention when she forgave the indebtedness. There is no evidence that she intended to make a gift only to appellee, or only to appellant, or what percentage of the gift was to be attributed to either. Thus, (1) there was a forgiveness of debt; (2) it increased the net value of marital property titled as tenants by the entireties; and (3) there is no evidence as to who the donor intended the donee or donees to be. It is difficult to see how the simple forgiveness of the joint marital debt of the parties could be anything but a gift to the marital unit.

We, in *Ward v. Ward,* 52 Md.App. 336, 449 A.2d 443 (1982) (*Ward II*), in discussing the purpose of the monetary award created by the Act, stated, "[t]he clear intent is to counterbalance any unfairness that may result from the

actual distribution of property acquired during the marriage, strictly in accordance with its title." *Id.* at 339, 449 A.2d 443. We had in *Ward v. Ward,* 48 Md.App. 307, 311, 426 A.2d 443 (1981) (*Ward I*),[8] stated, "The chancellor awarded appellant a fixed sum of $10,000 in substitution of that one-half interest. In so doing, he effected a transfer of the ownership of the property from one spouse to another, which § 3–6A–04(a) flatly forbids him to do." We also had said in *Ward I,* "Finally, there is nothing whatever in § 3–6A–05 which permits the chancellor to affect title to, or the interests in, a specific piece of property." *Id.* We thus perceive that the *Pope* holding and the prior precedential holdings offered as support do not affect title, though it can certainly be argued that that Court's " 'outlawing' of legalistic concepts of title" might give a superficial appearance to the contrary.

Under these circumstances, we hold that the forgiveness of an indebtedness on jointly owned marital property is a reduction of a marital debt and thus increases the net value of the marital property previously encumbered by the debt. Even though it is a gift, it is a gift to the marital unit, *not because of the title presumption,* but because of the nature of the gift in that it was a reduction of the debt on marital property owned by the marital unit. Therefore, we conclude that the trial judge erred in his calculation of the monetary award by improperly deducting the $30,000 loan (later forgiven) from the mother, which was utilized to construct the house, from his calculation as to the value of the marital property.

It is clear that the trial court, having omitted the $30,000 debt forgiveness and the household furnishings from its calculation, failed to determine adequately which property was marital. Thus, its calculation as to the value of the parties' marital property was necessarily incorrect. As the monetary award was at least, in part, based upon the trial

---

**8.** We restated our holding in *Ward I* and *Ward II* in *Grant v. Zich,* 53 Md.App. 610, 456 A.2d 75, *aff'd,* 300 Md. 256, 477 A.2d 1163 (1984).

court's erroneous calculation of the value of marital property, that award must be reconsidered.

We are, of course, cognizant that section 8–201(e)(2)(ii) states that marital property does not include property acquired by gift. A literal reading of the statute would forbid a gift's classification as marital property even if there was clear and convincing evidence that the gift was intended to be made and was made to the wife and husband, jointly and severally as tenants by the entireties, with a right of survivorship. We construe that section to mean property acquired by *one or the other* of the members of a marital unit. When a gift is to a marital unit *with no evidence that the donor intended otherwise,* that gift has to be characterized as something; it can only be marital property. Thus, we distinguish two types of gifts: a gift to both spouses and a gift to an individual spouse. Under the statute, a gift made to only one of the spouses is not marital property; a gift to both spouses may be marital property, depending upon the nature of the gift. The Court of Appeals, in *Pope,* emphasized the importance of (and lack of) clear and convincing evidence to prove that the gift had been made to Debra *and* Robert. Thus, in that case, the property's inclusion as marital property by the trial judge was held to be erroneous. The *Pope* decision suggests that when such clear and convincing evidence does exist that the gift was made to both spouses, its inclusion as marital property may, depending upon the circumstances, be correct regardless of the literal application of the language of section 8–201(e)(2)(ii).[9]

---

9. *See also Melrod v. Melrod,* 83 Md.App. 180, 187, 574 A.2d 1 (1990), where Judge Bloom said for us, "This inability to trace property acquired during the marriage *directly* to a non-marital source simply means that all property so acquired was marital property." (Emphasis in original.) We further stated that: "If he or she chooses to commingle marital and non-marital funds to the point that direct tracing is impossible, his or her property may lose its non-marital status." *Id.* at 188, 574 A.2d 1. It would follow that a marital debt forgiveness which increased the value of the marital property, in the

We, therefore, remand the case to the trial court with instructions to recalculate the value of the marital property and to recompute the monetary award. In so doing, it must take into consideration the $30,000 debt forgiven by Mrs. Paradiso's mother, the nature of and appropriate value of the household furnishings, and any other items that may have been omitted in its calculation.[10]

The Court of Appeals opined in *Pope* that we had joined that trial judge on a "primrose path." We were unaware that we, in *our* unreported *Pope* opinion, were creating a "way of life devoted to irresponsible hedonism, often of a sensual nature" or were taking the "easy" course. *The Random House Dictionary of the English Language* 1143 (Unabridged ed. 1983). As we have discovered since the Act's enactment, there are no courses of action available to the courts that are easy or sensuous, when marital property concerns are at issue.

As Judge Bloom opined for us in *Watson,* 77 Md App. at 622, 551 A.2d 505:

> As this case demonstrates, after ten years of litigation arising under the Act, confusion still reigns as to the nature of and distinction between "marital" and "nonmarital" property within the meaning of the statute....

JUDGMENT OF MONETARY AWARD VACATED; ALL OTHER JUDGMENTS AFFIRMED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE SHALL PAY THE COSTS.[11]

---

absence of any evidence to the contrary, must of necessity be marital property.

**10.** The method of calculating nonmarital and marital interests and the value of marital property is discussed both in *Watson v. Watson,* 77 Md.App. 622, 638, 551 A.2d 505 (1989), and *Grant,* 300 Md. at 276, 477 A.2d 1163 and illustrated by examples in *Blake v. Blake,* 81 Md.App. 712, 569 A.2d 724 (1990).

**11.** Because we are, in part, remanding this case to the circuit court, we do not need to address appellee's motion for partial transfer of

jurisdiction, as with the remand that court's jurisdiction is reestablished.