551 A.2d 505

**Donald C. WATSON**

v.

**Christine E. WATSON (Helfenbein).**

**No. 507, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 6, 1989.

624

David P. Sutton, Washington, D.C. (Jerome J. Stanbury, Lanham, on the brief), for appellant.

John J. Yannone (Eugene M. Zoglio, on the brief), Bowie, for appellee.

Argued before BLOOM, ROSALYN B. BELL and FISCHER, JJ.

BLOOM, Judge.

Maryland's Property Disposition in Divorce and Annulment Act (Act), Subtitle 2 of Title 8 of Maryland Family Law Code Annotated (1984), was originally adopted as §§ 3–6A–01 through 3–6A–08 of the Judicial Proceedings Article of the Code in 1978. The Act became effective as of January 1, 1979.[1] As this case demonstrates, after ten years of litigation arising under the Act, confusion still reigns as to the nature of and distinction between "marital" and "nonmarital" property within the meaning of the statute, and whether an interspousal transfer of property will convert nonmarital property into marital property.

---

1. Sections 3–6A–01 through 3–6A–08 of Md. Cts. & Jud. Proc.Code Ann., enacted by ch. 794 of the Acts of 1978, were repealed by ch. 296 of the Acts of 1984 and transferred to the Family Law Article with no substantive changes pertinent to this case. Although the original divorce decree in this case was entered prior to the effective date of the changeover, we shall cite to the corresponding sections of the Family Law Article in order to avoid confusion as to the statutory references. Henceforth, therefore, unless otherwise specified, Code citations are to sections of the Family Law Article.

Section 8–201 defines various terms as used in Subtitle 2. Subsection (e) defines "marital property" as follows:

(e) *Marital property.*—(1) "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement;  or

(iv) directly traceable to any of these sources.

This definition is made significant by section 8–205(a), which provides, in pertinent part:

(a) *Grant of award.*—After the court determines which property is marital property, and the value of the marital property, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

Before determining the amount and method of payment of a monetary award, if it intends to grant one, the court is required by § 8–205(a) to consider each of ten enumerated factors, two of which include "the contributions, monetary and non-monetary, of each party to the well being of the family" and "how and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property."

With those statutory provisions in mind, we turn to the facts of this case.

Donald A. Watson, appellant, and Christine E. Watson (now Helfenbein), appellee, were married in September 1967.  In November 1971, the parties purchased a house in Hyattsville, Maryland, titled it in both names as tenants by the entirety, and used it as their marital residence.  During the next eight years the Hyattsville house gradually became too small for the parties' family which, by 1979, had grown to include five children.  In order to acquire sufficient funds to purchase a much needed larger home, appel-

lant asked his mother for an advancement against his eventual inheritance from her. Complying with that request, appellant's mother gave him a power of attorney to sell certain property she owned. From the sale of that property, appellant received $40,000, which he deposited into a savings account, subject to the order of either Mr. or Mrs. Watson. Thereafter, the parties sold their Hyattsville house and deposited into the same joint account the net proceeds therefrom. In November 1979, Mr. and Mrs. Watson purchased a new home in Bowie, Maryland, titling it in both names as tenants by the entirety. The new marital residence was bought for approximately $95,000. What was left of the money in the joint savings account, after the parties had paid some joint debts therefrom, went toward the purchase price of the new house, closing costs, and new furnishings. A substantial portion of the purchase price was secured by a first mortgage, the monthly payments on which were made from funds subsequently acquired by the parties and deposited in their joint bank account.[2]

Eventually, the parties began to experience marital difficulties. They separated in May 1982, and on January 20, 1983, an absolute divorce was granted to the wife. As part of the judgment of divorce, the court awarded appellee the use and possession of the Bowie house and the family use personal property for a period of three years, reserving for later disposition any disputes relating to the sale of the marital home and to any grant of a monetary award. In March 1985, appellee voluntarily left the Bowie house, and appellant moved in. Appellee then sought determination of

---

2. The testimony was confusing and the record is unclear as to the amount of cash applied to the purchase price of the property and the closing costs at settlement as well as to the initial amount of the mortgage and the balance thereon at the time of trial, and the present value of the property. The only clear finding with respect to any of those facts is that $40,000 of the purchase price is traceable to the money appellant received from his mother. There was a finding or assumption that the mortgage balance was $52,000 but we cannot tell from the record the source or accuracy of that information.

the ownership of personal property and real property under what is now § 8–202 of the Family Law Article (formerly §§ 3–6A–03 and 3–6A–04 of the Courts Article),[3] specifically praying to have the use and possession order terminated, a sale in lieu of partition ordered, and an award of half the net sale proceeds of the house. Pursuant to appellee's petition, an evidentiary hearing was held before the Master for Domestic Relation Causes, Prince George's County, on the basis of which the master, in a report dated 4 September 1985, recommended, *inter alia*, that appellant receive a $40,000 credit representing his nonmarital contribution toward the purchase of the Bowie house. Appellee took exceptions to the master's report, which the circuit court, after a hearing, overruled. Appellee then obtained a review of that ruling by an *en banc* panel of the court. Md. Rule 2–551. The *en banc* court, by written opinion and order, reversed, holding that appellant had made a gift of the $40,000 to appellee, and remanded the case to the master for specific findings of fact relating to the nature of the parties' joint bank account and transactions made therefrom.

Following that remand, the master, in a supplemental report, recommended:

1) that the Bowie house be sold in lieu of partition;
2) that each party receive one-half of the net sale proceeds as titling the house as tenants by the entirety, coupled with appellant's gift intent, gave appellee an undivided one-half interest in the property;

---

**3.** Section 3–6A–03 dealt with personal property, which is not at issue here. § 3–6A–04 provided:

(a) When granting an absolute divorce or annulment, the court may resolve any dispute between the spouses with respect to the ownership of real property. However, the court may not transfer the ownership of real property from one spouse to the other.

(b) In accordance with the court's determination of the ownership of real property, the court may:

(1) Grant a decree which states what the ownership interest of each spouse is; and

(2) As to any jointly owned property, order a partition or sale in lieu of partition and a division of the proceeds.

3) that there was no nonmarital property to be addressed; and

· 4) that appellant was not entitled to a monetary award. Appellant's exceptions to the master's supplemental report were overruled, and the circuit court entered an order in accordance with the above recommendations. Mr. Watson has appealed from that order. The sole issue he raises is:

Whether the circuit court erroneously concluded that appellant made a gift of an undivided one-half interest in the Bowie house by virtue of titling the property as tenants by the entirety.

Appellant contends that the $40,000 received from his mother was an advancement on his inheritance and was a gift to him alone and not, therefore, marital property. He asserts that because the Bowie house was acquired by an expenditure of both nonmarital and marital property—the $40,000 gift to husband alone and some of the sale proceeds from the Hyattsville house—the residence should have been characterized as part nonmarital property and part marital property. He concludes that under the decision of the Court of Appeals in *Grant v. Zich*, 300 Md. 256, 477 A.2d 1163 (1984), that portion of the marital residence directly traceable to his $40,000 nonmarital contribution, being non-marital property, is not subject to equitable distribution. Appellee, on the other hand, contends that the Bowie house must be characterized wholly as marital property. She concedes that the $40,000 was a gift to appellant alone, that the Bowie house was purchased in part with funds directly traceable to that $40,000 gift, and that the presumption of gift doctrine does not arise by virtue of titling property as tenants by the entirety. She contends, nevertheless, that appellant's testimony shows that he had the requisite dona-tive intent to make a valid gift to her without regard to any gift presumption. Appellee concludes that her husband had made a gift to her of one-half of the Bowie house and that it was, therefore, marital property owned in equal shares.

Based on its interpretation of the decision of the Court of Appeals in *Dorsey v. Dorsey*, 302 Md. 312, 487 A.2d 1181

(1985), the *en banc* court, in remanding the case to the master to make a supplemental report, stated:

It is clear that the Court of Appeals has abrogated the common law presumption of gift created by the titling of property. It is equally clear that the Court of Appeals nor the Marital Property Act did not and has not created a contrary presumption....

The chancellor, in turn, based upon the findings set out in the master's supplemental report, stated that:

[T]he act of titling, under the circumstances, set forth in the testimony, constitutes a clear intent on the part of the Defendant to make a gift of an undivided one-half (½) interest in the property to the Plaintiff and therefore, there is no nonmarital property to be addressed by this court.

Both the *en banc* court and the chancellor were wrong.

*Dorsey* followed *Grant v. Zich, supra,* in which, contrary to the *en banc* court's belief, the Court of Appeals observed and reconfirmed that "under the common law of Maryland, when a spouse titles property as tenants by the entirety, a presumption of gift arises and upon dissolution of the marriage, one-half of the property constitutes the donee spouse's separate property." [4] The gift is one of a present legal interest in the property. The fact that one tenant by the entirety cannot unilaterally sever the tenancy because it is *per tout et non per my* does not make the transaction any less of a gift of a present property interest than if the donor spouse had caused the property to be titled in both names as joint tenants or tenants in common.

---

**4.** The presumption is a rebuttable one that is based on probability. *See,* McLain, *Maryland Evidence,* § 301.3 (example 16). When husband and wife are living together, and one of them expends money to acquire, improve or preserve property owned by both of them, it is much more likely that a gift is intended than that payment or reimbursement is expected. Such expenditures made by one spouse when husband and wife are no longer living together, however, will not be presumed to be a gift. *See, Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982).

Once the gift is complete, ordinarily the donee spouse has a vested interest in the property that cannot be divested. A divorce court cannot later take away the legal interest that had been given earlier, on the theory that the property remains "nonmarital," because to do so would violate § 8–202(a)(3), which expressly forbids the divorce court to "transfer the ownership of personal or real property from one party to the other." *See, Nisos v. Nisos,* 60 Md.App. 368, 380–81, 483 A.2d 97 (1984).

In this case, both parties, as well as the master, the chancellor, and the *en banc* court, appear to have gone astray by confusing the concepts of marital and nonmarital property with rights and estates in property. Appellant sought a return of his $40,000 contribution on the theory that it remained his property because it was nonmarital; appellee resisted on the theory that "it"—either the $40,000 or the property purchased with that sum—had been given to her. The master, chancellor, and *en banc* court dealt with the issue as one of a gift of property.

The use of the word "gift" in *Grant v. Zich* and later in *Dorsey* may have contributed to the confusion, because "gift" connotes a transfer of some type of estate or ownership or possessory interest in real or personal property. But in *Grant v. Zich* the Court used the word "gift" in connection with marital property only because it was rejecting the concept, adopted in several other states, that titling nonmarital property in the names of both spouses as tenants by the entirety constituted a gift to the marital unit of the nonmarital status of the property as well as the legal title. Judge Davidson, writing for the Court, was careful to refer to that concept as a "transmutation" of nonmarital property to marital property. Then, following the "source of funds" rule adopted in *Harper v. Harper,* 294 Md. 54, 80, 448 A.2d 916 (1982), the Court rejected that concept of transmutation. *Dorsey* reconfirmed the holding in *Grant v. Zich* that the presumption of gift arising from the titling of property in both spouses so that in the event of divorce the donee spouse legally owns a one-half interest as his or her

sole and separate property "has no application when characterizing property as nonmarital or marital under § 8–201(e) for the purpose of granting a monetary award under § 8–205(a)." 302 Md. at 317, 487 A.2d 1181. In *Dorsey* the trial court had erroneously held that there was a presumption of a "gift" of the nonmarital status of the property, *i.e.,* a gift not only of the legal estate but of the equities created by the Act, effecting a conversion of nonmarital to marital property. The Court of Appeals reversed and remanded to determine whether in the absence of a presumption such a gift was intended. It would appear that the Court continued to use the word "gift" because that was the word earlier used in *Grant v. Zich* and was also the word erroneously used and applied by the trial court. What the Court did in *Dorsey* that took it one step further than *Grant v. Zich* was to draw a distinction between the presumption of gift arising from titling property in both names and actual proof of all of the elements of a gift: donative intent, delivery or relinquishment of dominion, and acceptance (which is presumed in the absence of evidence to the contrary). 302 Md. at 318, 487 A.2d 1181. With respect to the legal estate alone, the presumption continues to suffice; to establish a gift of the status of the property under the Act in addition to the legal estate, thereby effecting a transmutation of the property from nonmarital to marital or *vice versa* as part of the gift, proof of all of the elements of such a gift is required. That includes, of course, proof of an intention to give or relinquish the contingent equitable claim that arises from the marital/nonmarital status of the property, which is an intention that cannot be presumed from the titling of the property in both names.

A question as to whether property is either marital or nonmarital (or partly marital and partly nonmarital, as in this case) arises only in connection with a divorce, and is of consequence only if the divorce court deems it appropriate to "grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property...." § 8–205(a). The status of property as either mari-

tal or nonmarital, therefore, is not "property" in the traditional sense of a legal estate or interest in real or personal property that is capable of being owned, leased, conveyed, given, or otherwise transferred. It merely confers authority on a divorce court, when it severs the bonds of matrimony, to grant a monetary award to adjust the equities and rights of the parties if a division of property according to legal title would be inequitable.

In *Herget v. Herget,* 77 Md.App. 268, 279, 550 A.2d 382, 387 (1988), this Court, through Judge Karwacki, noted that in *Falise v. Falise,* 63 Md.App. 574, 580, 493 A.2d 385 (1985), we pointed out that the right to a monetary award pursuant to § 8–205 is not an interest in the estate or property of one's spouse. Rather, it is a remedy provided to divorcing spouses to seek financial compensation to cure inequity in the distribution of property acquired during the marriage according to how that property is titled. *See also Zandford v. Wiens,* 314 Md. 102, 106, 549 A.2d 13, 14–15 (1988); *Niroo v. Niroo,* 313 Md. 226, 230–31, 545 A.2d 35 (1988).

Md. Family Law Code Ann. § 8–202(b)(2) (1984) provides that the court may order a sale in lieu of partition and a division of proceeds as to any property owned by both the parties. In *Grant v. Zich* the Court of Appeals said that in making a determination as to the disposition of the proceeds of the marital home, the appropriate analysis is the "source of funds" theory set forth in *Harper.* The Court explained that under the statutory provisions

a determination of what constitutes marital property for the purpose of granting a monetary award is not dependent upon the legalistic concept of title. The characterization of property as nonmarital or marital depends upon the source of the contributions as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained.

*Grant* at 300 Md. 269–70, 477 A.2d 1163.

■ We reiterate, therefore, what the Court of Appeals announced in *Grant v. Zich* and reconfirmed in *Dorsey:* the

presumption of a gift of legal interest to one spouse upon the other spouse's titling of property in the names of both spouses as tenants by the entirety [or, for that matter, as joint tenants or tenants in common] has no application when determining the nonmarital or marital status of property under § 8–201(e) for the purpose of a monetary award under § 8–205(a). *Dorsey,* 302 Md. at 317, 487 A.2d 1181. Since, by reason of the gift from appellant to himself and appellee as tenants by the entirety and the divorce which converted their ownership to a tenancy in common, each of the parties is entitled to an equal division of net proceeds upon the sale of the property, any determination by the court to grant a monetary award to effect an equitable distribution would require the court to consider the nonmarital/marital status of the property.

In *Wilen v. Wilen,* 61 Md.App. 337, 486 A.2d 775 (1985), the husband argued that because the marital residence was purchased in part with funds he received from the sale of his pre-marital home, the entire equity in the marital home should not be considered as marital property. He asserted further that he should have been given a credit for that portion of the net equity which was attributed to his investment of nonmarital funds. We agreed with that argument, based upon the following language in *Harper, supra.*

> [A] spouse contributing nonmarital property is entitled to an interest in the property in the ratio of the nonmarital investment to the total nonmarital and marital investment in the property. The remaining property is characterized as marital property and its value is subject to equitable distribution. Thus, the spouse who contributed nonmarital funds, and the marital unit that contributed marital funds each receive a proportionate and fair return on their investment.

*Harper,* 294 Md. at 80, 448 A.2d 916.

Likewise, appellant in the case *sub judice* argues that the $40,000 received from his mother was a gift to him alone and thus nonmarital property under § 8–201(e)(2)(ii) and that, therefore, based upon the above language in *Harper,*

he too is "entitled to an interest in the property in the ratio of [his] nonmarital investment to the total nonmarital and marital investment in the property."

Characterizing the status of the Bowie house, the chancellor relied upon the master's supplemental report which "found" that although the $40,000 was initially appellant's nonmarital property, he made a gift to his wife by his deposit into the parties' joint account and therefore the Bowie house was purchased solely with marital funds entitling each to one-half of the net sale proceeds and no monetary award.

Whether appellant made a gift of property, *i.e.*, either co-ownership interest in the $40,000 by depositing it in a joint savings account or a fee simple estate in the realty as co-tenant by the entireties by so titling the house purchased with that $40,000, is irrelevant to our consideration. It is also irrelevant whether a party establishes the fact of such a gift by relying on a presumption or by the production of evidence sufficient to prove all the elements of gift set out in *Dorsey*. As a consequence of that gift, Mr. and Mrs. Watson became equal tenants in common of the realty upon the severance of their marriage, with each being legally entitled to one-half of the proceeds of any sale of the property. The making of a gift of an ownership interest or estate in the property, however, does not affect a transmutation to marital property of the partial nonmarital property status derived from the application of the "source of funds" rule announced in *Harper*. The master found, as a matter of fact, that $40,000 of the funds used to acquire the Bowie home was directly traceable to the money advanced to appellant by his mother. What is at issue here, therefore, is not whether appellant gave appellee a legal estate or interest in his property, but whether he also gave, surrendered, released, or waived his right, in the event of a future divorce, to claim whatever benefits the nonmarital status of the property would afford him when the court determines whether to grant either party a monetary award in order to effect an equitable adjustment.

One spouse may, of course, give up or waive this contingent right in favor of the other spouse. Indeed, it is relatively common for such waivers to be included in formal marital settlement agreements. No particular formality is required, however. Any conduct or language that clearly indicates such an intent will suffice. *See, e.g., Carsey v. Carsey,* 67 Md.App. 544, 508 A.2d 533 (1986). But as with any gift or waiver, an intent to make it must be shown, and the party claiming that there was a gift or waiver of the contingent equitable right or claim in addition to a gift of the legal estate has the burden of proving that intent.

We have thoroughly reviewed the record in this case, and we find therein not a scintilla of evidence to support a finding of such a gift, surrender, or waiver of that contingent equitable right. The only specific evidence as to appellant's intent in causing the property to be titled in the names of both parties as tenants by the entirety was Mr. Watson's own testimony. He said, in effect, that he wanted to provide for his wife and children in the event of his death. Rather than indicating an intent to give up any future claim for equitable relief in the event of a divorce, as found by the court, Mr. Watson's expressed intent was utterly consistent with the presumption of gift that arises from the titling of property acquired with the funds of one spouse in the names of both spouses as tenants by the entirety: each was to own an undivided estate with the right of survivorship so that in the event of the death of either spouse the other would be sole owner. But neither the temporary deposit of funds in a joint account pending purchase of the Bowie property nor the titling of that property in both names as tenants by the entirety can possibly be construed as indicative of the requisite intent to give up or waive a possible future right that could arise only in the event of a divorce. The very act of investing an advance against his inheritance in a house for himself and his family, to be owned by himself and his wife, is utterly

inconsistent with Mr. Watson entertaining any thought of divorce at that time.

We hold, therefore, that the finding that appellant had made a gift to appellee of such a nature as to effect a transmutation of his nonmarital property to marital property was clearly erroneous, and we remand in order that the court may consider whether the partial nonmarital status of the Bowie property would require a grant of a monetary award to effect an equitable distribution.

Absent a transmutation from nonmarital to marital property, appellant is at least entitled to claim that, equitably, he should receive a proportionate and fair return on his nonmarital investment, by way of a monetary award, provided there is sufficient marital property to support such an award. His contribution should weigh heavily in the court's decision as to whether to grant appellant a monetary award. And if the court determines that a monetary award is appropriate because division of the parties' property according to legal title would not be equitable, its determination as to what portion of the property in question is marital and what portion is nonmarital will require the application of the "source of funds" rule, establishing the ratio between the contributions to the acquisition of the Bowie house made by appellant and by the marital unit.[5] It is thus that

---

5. For guidance, we shall reiterate certain principles enunciated in *Harper* governing the method of calculating nonmarital and marital interests and the value of marital property. Property is nonmarital in the ratio that the nonmarital investment bears to the total nonmarital and marital investment in the property.

The illustrative example in *Grant v. Zich,* 300 Md. 256, 276 n. 9, 477 A.2d 1163, will furnish additional guidance in calculating the ratio. To the extent that property is nonmarital, its value is not subject to equitable distribution. Property is marital in the ratio that the marital investment bears to the total nonmarital and marital investment in the property. To the extent that the property is marital, but only to that extent, its value is subject to equitable distribution. Consequently, it may be that the marital portion is so small in relation to the nonmarital portion that even a monetary award in the full amount of the marital portion would not effect a return to the husband of his nonmarital contribution. So be it. When one spouse makes a gift to

the present net value or equity in the property can be apportioned to determine how much of that value is marital and how much is nonmarital.

After determining what portion of the property is marital and the value thereof, and taking into account the value of any other marital property out of which a monetary award could be made, the court should then decide whether to grant a monetary award and, if so, in what amount, by considering the ten factors enumerated in § 8–205(a). Four of those ten factors, Nos. (1), (2), (3), and (10), clearly have been affected by the $40,000 contributed by appellant to the family unit.

JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.

---

the other or to the marital entity, there is no guarantee that it would be recoverable in the event of a divorce. As noted in *MacIntire v. McKay*, 74 Md.App. 577, 580, 539 A.2d 258 (1988) (quoting from an earlier unreported per curiam opinion in the same case):

"While a monetary award 'is intended to compensate a spouse who either holds no title or holds title to less than an equitable portion of that property' ..., we recognize that it does not allow a truly equitable distribution in cases such as the one *sub judice,* where both spouses hold property that is overwhelmingly the non-marital property of one of the spouses, because the award is limited to the amount of the marital property."