569 A.2d 724

**George S. BLAKE**

v.

**Betty Lou BLAKE.**

**No. 885, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Feb. 9, 1990.

714

Marvin I. Singer, Baltimore (Mark L. Potter, Glen Burnie, on the brief), for appellant.

Ilene S. Cohen, Annapolis, for appellee.

Argued before GARRITY, ROSALYN B. BELL and WENNER, JJ.

ROSALYN B. BELL, Judge.

This domestic dispute, decided in the Circuit Court for Anne Arundel County, raises four questions—two under the Property Disposition in Annulment and Divorce Act, Md. Fam.Law Code Ann. § 8–201 *et seq.* (1984, 1989 Cum.Supp.), one dealing with alimony under Md.Fam.Law Code Ann. § 11–106 (1984), and the fourth on counsel fees under Md.Fam.Law Code Ann. § 11–110 (1984). Specifically, George Blake, appellant, articulates the issues as:

— Whether a nonmarital portion of a family home is determined by the percentage of the original purchase price or whether the portion is altered by later repairs and improvements.

— Whether direction to pay an amount representing a portion of her marital share and a nonmarital interest to one spouse out of the proceeds of the sale of the parties' jointly held bank account constituted a prohibited transfer of ownership under the Act.

— Whether indefinite alimony is appropriate when the dependent spouse offered neither expert testimony nor testimony relative to whether she could secure a better job in other lines of work.

— Whether counsel fees may be awarded when a monetary award sufficient to cover her fees is also made.

Since we conclude that the direction to pay what should have been designated a monetary award out of the proceeds of jointly held property is an impermissible transfer, a remand is necessary. While this remand will probably result in no ultimate relief to Mr. Blake, the judgment as entered must be corrected. We explain.

George and Betty Blake were divorced following a separation of over two years. Mr. Blake was a few weeks shy of age 57 at the time of trial, while Mrs. Blake was already

57. The marriage had lasted nearly 37 years, during which they had raised two sons to adulthood. At the completion of the trial, the court rendered an oral opinion that was followed by a written order prepared by counsel for Mrs. Blake. We will relate the detailed relevant facts when and as they pertain to the specific issues.

## MARITAL PROPERTY

The determination of the marital property and nonmarital property is a primary issue in this case. Section 8–201(e) defines "marital property" as follows:

"(1) 'Marital property' means the property, however titled, acquired by 1 or both parties during the marriage.

"(2) 'Marital property' does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources."

In the instant case, Mr. and Mrs. Blake purchased their home property as tenants by the entirety in 1969 for $25,-000. Mrs. Blake thereafter inherited property from her family. The sale of that inherited property resulted in proceeds of sale of $5,811. The trial judge found, and Mr. Blake does not disagree, that Mrs. Blake applied that sum to the mortgage on the home of the parties; that this sum was traceable to the inheritance; and that no gift was made or intended. The balance of the mortgage was paid wholly by family funds. On the question of the gift, prior to trial Mr. Blake contended this was a gift. On appeal, however, he has abandoned that position and focuses on whether the computation of the nonmarital property is correct and whether the order of the court required an impermissible transfer of assets. We will first consider the computation of the nonmarital share.

### Valuation of the Nonmarital Interest

Mr. Blake challenges the court's findings which led to the valuation of the nonmarital portion and the computation.

The computation was based on the oft-cited footnote 9 in *Grant v. Zich*, 300 Md. 256, 276, 477 A.2d 1163 (1984), which provides:

"A husband and wife acquired real property for a purchase price of $40,000. The wife contributed a down payment of $10,000 from property that she acquired prior to marriage. The remaining $30,000 was financed by a mortgage signed by both the husband and the wife. One-quarter of the value of the property is the wife's nonmarital property and three-quarters of the value of the property is marital property.

"If, at the time of the dissolution of the marriage, the property has appreciated in value to a fair market value of $60,000 and the mortgage indebtedness has been reduced to $20,000 by the payment of $10,000 of marital funds, the following division would be appropriate. One-quarter of the $60,000 fair market value of the property, or $15,000, would be the wife's nonmarital property, not subject to equitable distribution."

*See also Harper v. Harper*, 294 Md. 54, 81–82, 448 A.2d 916 (1982).

Here, the real property was acquired for $25,000. Mrs. Blake contributed $5,811. That contribution was directly traceable to the inheritance and hence, was not marital property. The proceeds of the sale of the family home were $314,000, which grew to $325,166 by the time of the divorce. The trial judge calculated the amount of nonmarital property attributable to the $325,166 by determining the ratio that the nonmarital investment ($5,811) bears to the total nonmarital and marital investment in the property ($25,000), resulting in 23.24 percent. Applying 23.24 percent to $325,166, the trial judge determined the nonmarital amount in the property to be $75,568. We find no error in this apportionment.[1]

---

1. This amount is not subject to equitable distribution as per the example; it is subject to distribution as ownership as discussed hereafter.

 While a generalized complaint is made about the apportionment, Mr. Blake offers no alternative method of ascertaining the portion. In view of the absence of any real controversy on the method of computation, we move next to Mr. Blake's complaint that the trial judge should have added the cost of repairs and improvements made on the house to the original purchase price before he calculated Mrs. Blake's nonmarital investment ratio. As an example, in explaining why the improvements should be considered, Mr. Blake posits that the house when purchased was in a state of deterioration and run down. He contends it required extensive work, including installation of new floors, stripping the interior walls down to the bare block and redoing them, installation of new windows and doors, installation of two new roofs, and construction of a bulkhead over a period of years using over two hundred tons of rock. Mr. Blake argues that the cost of those renovations were undertaken jointly by the parties, but that he alone did the work. Thus, he contends it is inequitable to ignore the benefits and improvements to the property that accrued thereby, which significantly increased its value.

Mr. Blake argues that the trial court may infer that the property in question was purchased cheaply, because of its condition. He further contends that it was not habitable while the floors, walls, windows, doors and roof were being replaced, and that the cost of the repairs should be considered in determining the amount of the marital investment, or the true cost of the home. On habitability, he has a problem as admittedly, he, his pregnant wife, and his young son were all living in the home throughout the time the repairs were being accomplished. On the repairs and improvements, he asks us to assume that those repairs and improvements cost $50,000 and were marital property. Thus, the proportion of the nonmarital contribution by Mrs. Blake would be calculated in relation to $75,000 (purchase price of $25,000 plus repairs and improvements), rather than solely the amount of the original purchase price, or 7.75 percent instead of 23.24 percent.

Mrs. Blake, however, points out that Mr. Blake is not correct and that she and the children did the major part of the work. The son of the parties supported this position, positing that Mr. Blake was the superintendent and Mrs. Blake and the children were the backbone or laborers.

While interesting, all this makes no difference here—there simply is no credible evidence of the costs of the repairs or improvements, labor or materials, or the change in value resulting therefrom. Moreover, the $50,000 figure is presented for the first time on appeal. Despite Mr. Blake's contention that the trial judge is responsible for determining the value of the marital property, this responsibility does not carry the burden of producing such evidence. Mrs. Blake established the cost of the property and her contribution to it. It was then Mr. Blake's obligation, if he wished to do so, to controvert that evidence by showing the increased value resulting from improvements and, in appropriate circumstances, from repairs. As the party seeking the monetary award, Mrs. Blake had the burden of establishing (1) the value of the marital property, (2) that a portion of this property was nonmarital, and (3) its (the nonmarital property) value. Although that ultimate burden of proof did not shift, once evidence sufficient to establish those facts was presented by Mrs. Blake, the burden of producing evidence to the contrary fell on Mr. Blake. *See generally* McLain, *Maryland Evidence*, § 300.1 (1987). While the trial judge found that both parties did work on the house, he did not attribute any specific value to that work. Since he was not confronted with any evidence of that increased value, he was not clearly erroneous in his finding.

■ Mr. Blake also argues that the trial court did not consider the full amount of his payments on the mortgage as modifying the basic marital share. Certainly, the principal payments were reflected as being made out of marital property. The court did not discuss the mortgage contributions other than principal, but it was not obliged to, since there was no specific claim made on those payments. Mr.

Blake contends on appeal for the first time that the court should credit taxes and interest payments. Taxes and interest are not ordinarily capital investments and, in the absence of some compelling reason to consider them as such, we decline to depart from the norm. Ample evidence supported the ruling of the trial judge. We cannot and do not find him clearly erroneous.

### Prohibited Transfer

The trial judge in his oral opinion after trial found that the total assets of the parties amounted to $460,418.[2] From that, he deducted the nonmarital portion of the proceeds of the sale of the home as computed to determine marital property of $384,850. He then reviewed the appropriate factors and stated that one-half of the $384,850 or $192,425[3] would be Mrs. Blake's portion and $192,425, Mr. Blake's portion. The trial judge directed counsel to prepare an order on this basis. He instructed counsel then to subtract the assets in Mrs. Blake's sole name and the balance "she'll be entitled to take that out of the money that's held jointly. That money that's being held in the bank account. The balance to belong to Mr. Blake." The order implemented this ruling and specified that Mrs. Blake was "entitled to take the value of her portion of the joint marital property ($176,768.00) from the parties' Sovran ac-

---

2. Although not specified in his oral opinion, the evidence presented was that the parties had the following assets:

$325,166 – on deposit from house proceeds
11,757 – other joint assets
107,838 – in his name solely
15,657 – in her name solely

$460,418

3. The portion of the marital property was computed as follows:

$460,418
– 75,568

$384,850

= $192,425

count containing proceeds of sale" of the parties' home. No designated monetary award was made. Mr. Blake contends this amounts to an impermissible transfer of assets from him to Mrs. Blake. We agree.

The ownership of the proceeds in the savings account ($325,166) was held jointly by the parties. While a monetary award may be made to adjust the equities of the parties, the ownership cannot be changed.

Although the trial in this case was had after the filing of *Watson v. Watson*, 77 Md.App. 622, 551 A.2d 505 (1989), apparently neither the trial court nor trial counsel referred to the case. In *Watson*, 77 Md.App. at 632, 632–33, 633, 551 A.2d 505 (citations omitted), we said:

> "Once the gift is complete, ordinarily the donee spouse has a vested interest in the property that cannot be divested. A divorce court cannot later take away the legal interest that had been given earlier, on the theory that the property remains 'nonmarital,' because to do so would violate § 8–202(a)(3), which expressly forbids the divorce court to 'transfer the ownership of personal or real property from one party to the other.'
>
> \* \* \* \* \* \*
>
> "[T]he presumption of gift arising from the titling of property in both spouses so that in the event of divorce the donee spouse legally owns a one-half interest as his or her sole and separate property 'has no application when characterizing property as nonmarital or marital under § 8–201(e) for the purpose of granting a monetary award under § 8–205(a).'
>
> \* \* \* \* \* \*
>
> "A question as to whether property is either marital or nonmarital (or partly marital and partly nonmarital, as in this case) arises only in connection with a divorce, and is of consequence only if the divorce court deems it appropriate to 'grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property....' § 8–205(a)."

Faced with this holding, counsel for Mrs. Blake would have us conclude that the issue was not preserved. Rule 8–131(a). While this position might be an attractive solution, it is not correct. The thrust of Mr. Blake's case was that the proceeds of the sale should be divided equally and, while not with great precision, he does preserve the issue. Mrs. Blake also contends we are dealing with form over substance. While under these facts that may turn out to be so, that does not make the verdict correct; hence, we will need to remand to the trial judge.[4] We will articulate the process as it applies here and remand for the trial judge to enter the monetary award in light of the process.

In *Harper,* the Court of Appeals enunciated the three-step process that must be followed in establishing a monetary award.

"[ (1) ] [T]he trial court must initially characterize all property owned by the parties, however titled, as either nonmarital or marital.... [ (2) ] Once characterized, the value of the marital property must be determined. Thereafter, [ (3) ] the value of the nonmarital property of each spouse is assigned to that spouse and the value of the marital property is equitably distributed between the spouses.... In making this equitable distribution, the trial court must consider nine relevant factors, including the monetary and nonmonetary contributions of each spouse, the value of the property interests of each spouse, and the effort expended by each spouse in accumulating the marital property."

---

4. Mrs. Blake also contends the issue is moot as the bank has made distribution in accordance with the order and hence, the judgment is satisfied. We find this position strange. Just because a judgment is satisfied does not necessarily make it moot. "A case is moot if at the time it is before the Court there is no existing controversy between the parties *and* no effective remedy which the court can provide." *Williams v. Williams,* 63 Md.App. 220, 225, 492 A.2d 649, *aff'd,* 305 Md. 1, 501 A.2d 432 (1985) (emphasis added). Certainly, an existing controversy still exists. It does, however, mean that the monetary award may already be satisfied. Of course, if the division was made with the intent it settle the case, we would have a different situation.

*Harper,* 294 Md. at 79, 448 A.2d 916. Since that time, some case law refinements and some legislative modifications have been made, but the basic process has not changed.

By applying the steps precisely, while the end result appears the same, we avoid the pitfall of an impermissible transfer.

### The Three Steps

Step One: the characterization of all property as either marital or nonmarital. § 8–203. In this case, the court, applying the source of the funds theory under *Harper,* found a portion of the house owned by the parties to be nonmarital property, namely, traceable to inherited property. The balance of the parties' assets was marital property.

Step Two: determine the value of the nonmarital property. § 8–204.

| | Nonmarital | Marital | Total |
|---|---|---|---|
| Joint proceeds of the sale of the home | $ 75,568 | $249,598 | $325,166 |
| Other joint property | | 11,757 | 11,757 |
| Property solely in his name | | 107,838 | 107,838 |
| Property solely in her name | | 15,657 | 15,657 |
| | $ 75,568 | $384,850 | $460,418 |

Step Three:[5] the value of the nonmarital property of each spouse is assigned to that spouse and the value of the marital property is equitably distributed after consideration of the factors specified in § 8–205. Based on its considera-

---

5. The 1986 amendment to § 8–205 permitted as a part of this step, transfer of ownership of an interest in a pension, retirement, profit sharing or deferred compensation from one party to either or both in addition to granting a monetary award. In the instant case, the trial judge decided to leave the retirement funds as presently owned; hence, the retirement funds were part of the distribution. Had they been transferred, that value would have been carved out and divided as an interim step between 2 and 3, reducing the amount actually to be distributed and the monetary award. *See Bangs v. Bangs,* 59 Md.App. 350, 475 A.2d 1214 (1984).

tion of these factors, the court decided that the marital property should be equally shared.

Assignment

| | His | Hers | Total |
|---|---|---|---|
| Nonmarital property | | $ 75,568 | $ 75,568 |
| Marital property | $192,425 | 192,425 | 384,850 |
| Total property | $192,425 | $267,993 | $460,418 |

Ownership

| | His | Hers | Total |
|---|---|---|---|
| Solely owned property | $107,838.00 | $ 15,657.00 | $123,495 |
| Joint property | 168,461.50 | 168,461.50 | 336,923 |
| | $276,299.50 | $184,118.50 | |
| Monetary award to balance | −83,874.50[6] | +83,874.50 | |
| | $192,425.00 | $267,993.00 | $460,418 |

The trial judge, instead of granting a monetary award, balanced the equities by transferring ownership in the joint account.

When implementing the monetary award, the court shall determine the amount and method of payment of the award. § 8–205(a). No provision is made for the transfer of property of one spouse to the other. In fact, in § 8–202(a)(3), except as it relates to certain employee benefits, "[t]he court may not transfer the ownership of personal or real property from 1 party to the other." *See also* Report of *The Governor's Commission on Domestic Relations Laws,*

---

**6.** The computation of the amount to balance is as follows:

| | |
|---|---|
| Disproportionately larger distribution | $276,299.50 |
| Less marital share | 192,425.00 |
| | $ 83,874.50 |

The award could be subject to a further caveat which is not an issue here. The monetary award is limited by whether the marital property is sufficient to support such an award. *Watson v. Watson,* 77 Md.App. 622, 638, 551 A.2d 505 (1989).

January, 1978. The direction to the court under § 8–205 does not carry with it a right in the court to determine the assets that will be transferred or utilized to fund that award. Hence, the trial judge's directive to Mrs. Blake to take her portion out of the joint account was improper.

■ Mrs. Blake contends, however, that the decision of the trial judge in transferring to her a disproportionate share of the joint account is no different than the decision of the trial judge in *Thomasian v. Thomasian,* 79 Md.App. 188, 556 A.2d 675 (1989). In *Thomasian,* two bank accounts were titled in the names of the parents and the two children. Each child had an account with the parents. The evidence was, and the Master found, the accounts were educational trust accounts for the children. This was clearly borne out by evidence that each account was being taxed to the respective child as an educational trust account. The transfer made was to "Mrs. Thomasian's name for the benefit of each of the children." *Thomasian,* 79 Md.App. at 201, 556 A.2d 675. The statutory provisions permitting a monetary award does not abrogate the law relative to a constructive or resulting trust. "A resulting trust is one which exists because of the inferred or presumed intention of the parties where the terms of the disposition or accompanying facts establish that the beneficial interest is not to go with legal title." *Battle v. Allen,* 250 Md. 672, 675, 245 A.2d 590 (1968) (citation omitted).

■ Under the law prior to the adoption of the concept of a monetary award, a finding of a resulting trust could overcome the prohibition of transfer of property of one to the other. *See Ensor v. Ensor,* 270 Md. 549, 312 A.2d 286 (1973). So, the finding of a resulting trust can overcome the prohibition of transfer of property of one to the other since the adoption of the concept of a monetary award. *Thomasian* is inapposite. Thus, we proceed to Mr. Blake's other contentions of error.

## ALIMÓNY

■ Mr. Blake complains that the trial court's award of alimony was in error because it was made largely upon the basis that his income was twice that of Mrs. Blake's.[7] While the husband's income was twice that of the wife, that was only one aspect utilized and commented upon by the court.

The trial judge thoroughly reviewed the facts before making an alimony determination as evidenced by his specific reference to the factors enumerated in § 11–106(b). He referred to Mrs. Blake's age, 57, and the fact that she is not self-supporting. Finally, he expressed his view that, given the time necessary for further education or training, "I don't know that there's a whole lot more that she can do. She's doing the best she can."

While rehabilitation has become the principal function of alimony, *Rosenberg v. Rosenberg*, 64 Md.App. 487, 531, 497 A.2d 485, *cert. denied*, 305 Md. 107, 501 A.2d 845 (1985), and rehabilitative alimony has become the legislative award of choice, *Turrisi v. Sanzaro*, 308 Md. 515, 524–25, 520 A.2d 1080 (1987); *Bricker v. Bricker*, 78 Md.App. 570, 573–74, 554 A.2d 444 (1989), accommodation is made for awards for an indefinite period if the court finds under § 11–106(c)(1) that

"due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting[.]"

The trial judge did not articulate the precise words of the statute, but his meaning could not be more clear.

The trial judge referred to the earlier discussion of the parties' respective standards of living, duration of marriage,

---

7. Mr. Blake made approximately $42,000 and received some fringe benefits, including retirement. Mrs. Blake made approximately $20,-000, although she had worked outside the home in addition to serving as homemaker throughout most of the marriage. Her only retirement benefit is social security. We need not decide whether this is unconscionably disparate under § 11–106(c)(2), as the trial judge amply justified indefinite alimony under § 11–106(c)(1).

monetary and nonmonetary contributions, circumstances of estrangement, and physical condition. He even alluded to the fact that there was no direct evidence of their mental condition, but based on his observations during the trial, he was of the opinion that neither had a problem in this area. He also commented on Mr. Blake's ability to pay alimony. Contrary to Mr. Blake's assertion, the court considered the monetary award in granting alimony, saying: "I assume she will be in a much better position after she receives ... her share of what's being held." This explained why an amount larger than $175 a month was not awarded.

We have repeatedly held that the trial court need not employ a formal "checklist," but may express a decision on alimony in any way that shows consideration of the necessary factors. *Newman v. Newman,* 71 Md.App. 670, 678, 527 A.2d 61 (1987); *Campolattaro v. Campolattaro,* 66 Md.App. 68, 81, 502 A.2d 1068 (1986). In fact, we expressly approved very similar wording and analysis by the same trial judge in *Zorich v. Zorich,* 63 Md.App. 710, 717–18, 493 A.2d 1096 (1985). In *Zorich,* we found that the judge's oral opinion made it obvious that he was fully aware of and applied the law when he made the alimony award. This same trial judge in the instant case indicated his consideration of the necessary factors. We cannot conclude his findings were clearly erroneous or that in awarding alimony he abused his discretion.

As for Mr. Blake's allegation that the finding on Mrs. Blake's ability to become self-supporting was "sparse," there was ample evidence of her employment abilities and prospects. The trial court is competent to make this decision without evidence from a rehabilitation counselor or personnel officer, as Mr. Blake would have us require. *Bricker,* 78 Md.App. at 575–76, 554 A.2d 444. This trial judge was well situated, as was the trial judge in *Bricker,* to make a determination of indefinite alimony where the evidence was that a 57–year–old woman who had a very hard time getting her present job and did not think that, at that age she would be going back to school, nor

would she be able to compete against younger people.[8] In addition, in the instant case, the trial court had before it the parties' salary histories over a 24-year period.[9]

In his brief, Mr. Blake asks us to theorize that, under certain conditions which he hypothesizes, Mrs. Blake might do better. He goes to great lengths to calculate just how much Mrs. Blake could make from investing her share of the marital award, based on his own rate of return, and adding the greater income he insists she would have after retraining for some unspecified "better paying position." He ignores, however, her $150,000 debt, incurred to buy her new residence. The evidence had been uncontradicted that she had obligated the major portion of her expected portion of the parties' assets to the purchase of a new home; that her son was living with her, as she needed his substantial contribution to keep afloat, but that he only intended to remain until she could manage alone. Mrs. Blake had also borrowed substantial sums from her son to make the house purchase. The trial court must not speculate about potential investment income and must rely only on actual evidence. *Thomasian*, 79 Md.App. at 192, 556 A.2d 675. Moreover, the time for presenting evidence of the amount of income, which might be generated from the marital award, was at trial. On appeal is not the time to make up for the omission by posing hypothetical financial possibilities.

## COUNSEL FEES

Mr. Blake does not dispute the reasonableness of the amount of counsel fees awarded to Mrs. Blake, but ques-

---

8. Mr. Blake's contention that Mrs. Blake could obtain employment as a buyer, and his speculation that a buyer would make more money, is just that—speculation.

9. If our understanding of what the trial judge meant to do is in error, and he enters a monetary award substantially different than what is envisioned here, the alimony award should also be revisited, as the two awards are interdependent. *See* Md.Fam.Law Code Ann. § 8–205(b)(9) (1984, 1989 Cum.Supp.), and § 11–106(b)(11)(ii) (1984).

tions whether any fee should have been granted since Mrs. Blake received both a monetary award and alimony.

Mrs. Blake placed in evidence a statement of costs and fees totaling $9,104.62. This represented fees and costs accrued prior to the trial. While it appeared that Mrs. Blake had paid a portion of this prior to the hearing, there was still due and owing at least $5,000. The fact that the trial court awarded Mrs. Blake only a portion of her own counsel fees supports the conclusion that the trial judge considered this contention of Mr. Blake. The trial judge evaluated the parties' respective financial positions and determined that Mrs. Blake should be primarily responsible for her own counsel fees which is evidenced by the result of the award of $2,500.

Mr. Blake suggests that he should not contribute to counsel fees because there was no indication that the legal presentation of Mrs. Blake's position was affected or impaired by an inability to pay her attorney. This simply is not the test. Rather, the trial court must consider the financial resources and needs of both parties and whether there was substantial justification to prosecute or defend the proceeding before making an award of attorney's fees. § 11–110(c)(1) & (2). The court considered and articulated the parties' resources and needs. The award of indefinite alimony patently illustrates the justification of defending Mrs. Blake's significant legal interests in this case. Moreover, we cannot conclude that the trial court overlooked the fact that Mrs. Blake partially paid her counsel fees with funds from repayment of a loan to the parties' son, nor did he forget the marital award and alimony.

We must also note that an equal division of marital assets "hardly means that the Wife is in an equal position to pay (or, for that matter, should have been required to pay) her attorneys' fees and other costs of the divorce proceeding...." *Wassif v. Wassif,* 77 Md.App. 750, 765, 551 A.2d 935, *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989). There

must be an individualized assessment of the circumstances of each case.

Under these circumstances, the trial court's decision that Mr. Blake should contribute a portion of Mrs. Blake's counsel fees—what would ultimately be substantially less than half—was an entirely proper exercise of judicial discretion, neither unauthorized nor clearly erroneous. *See Holston v. Holston,* 58 Md.App. 308, 326–27, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984); *Gravenstine v. Gravenstine,* 58 Md.App. 158, 182, 472 A.2d 1001 (1984).

JUDGMENT AFFIRMED IN PART AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLANT.