*Andrew Wasyluszko v. Lisa Wasyluszko*, No. 2220, September Term 2019.  Opinion by Beachley, J.

DIVORCE – MONETARY AWARD – NON-MARITAL PROPERTY – TRACEABLE FUNDS

DIVORCE – MONETARY AWARD – MANDATORY FACTORS – COURT EXPLANATION

**Facts**:  The parties were married on August 22, 1998, and at the time of divorce Mr. Wasyluszko owned several retirement and non-retirement accounts.  Relevant to this appeal are the following four accounts: Fidelity 403(b), Janus Henderson, DWS Equity Fund, and Fidelity IRA # 3342.

For purposes of its monetary award analysis, the trial court determined that the four accounts listed above constituted marital property, and would therefore be considered for equitable distribution as part of the court's monetary award.  Mr. Wasyluszko appealed, arguing that the accounts were non-marital because the evidence showed that they were directly traceable to his pre-marital contributions.

Mr. Wasyluszko also argued that the court erred in issuing its monetary award by failing to explain how its consideration of factors in Md. Code (1984, 2019 Repl. Vol.), § 8-205(b) of the Family Law Article ("FL") led to its ultimate decision to award $840,000.

**Held**:  Monetary award and attorney's fees vacated.

The trial court erred in treating three out of the four accounts as exclusively marital property.  Although there was insufficient evidence to show that the Fidelity IRA # 3342 account was non-marital property, there was sufficient evidence concerning the remaining three accounts to show that at least some of the funds were non-marital.

Regarding the Fidelity 403(b) account, the evidence showed that, although the value of the shares fluctuated during the course of the marriage, the number of shares did not decrease.  Accordingly, the shares that were accounted for prior to the marriage still existed at the time of the divorce and should have been treated as non-marital property.

Similarly, the shares in the Janus Henderson account never decreased during the marriage, although the value of those shares fluctuated.  As with the Fidelity 403(b) account, the shares that were shown to exist prior to the marriage should have been treated as non-marital property.

Lastly on this point, regarding the DWS Equity fund shares, the evidence showed what the balance of the account was prior to the marriage, and the parties stipulated that Mr.

Wasyluszko made five $200.00 contributions during the marriage. Because the evidence showed that Mr. Wasyluszko never made any withdrawals from the account during the marriage, his pre-marital interest in the account (82.9%) survived and should have been treated as non-marital property.

Additionally, the trial court was not required to explain how its consideration of the FL § 8-205(b) factors resulted in its monetary award. To be sure, consideration of these factors is mandatory, but we are aware of no cases holding that a court must explain its calculation of the monetary award based on its treatment of the FL § 8-205(b) factors. A court is not required to articulate every step in its thought process, and judges are presumed to know the law and apply it correctly. Rather, a court commits reversible error when its distribution of marital property yields a substantial disparity, and its consideration of the FL § 8-205(b) factors fails to justify that disparity.

Finally, because a court's monetary award and award of attorney's fees are so closely interrelated, we must vacate the court's award of attorney's fees in addition to its monetary award. *Turner v. Turner*, 147 Md. App. 350, 400 (2002).

Circuit Court for Baltimore County
Case No. 03-C-13-014795

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2220

September Term, 2019

_____

ANDREW WASYLUSZKO

v.

LISA WASYLUSZKO

_____

Fader, C.J.,
Reed,
Beachley,

JJ.

_____

Opinion by Beachley, J.

_____

Filed: April 28, 2021

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The principal issue in this case is whether the Circuit Court for Baltimore County erred in characterizing four retirement and non-retirement accounts owned by appellant Andrew Wasyluszko as marital property. As to three of the four accounts in dispute, we conclude that a portion of those accounts constituted non-marital property because the uncontroverted evidence demonstrated that, at the time of the divorce, Mr. Wasyluszko still owned shares that he acquired prior to marrying appellee Lisa Wasyluszko. We shall therefore vacate the circuit court's judgment and remand for further proceedings.

## BACKGROUND

The parties married on August 22, 1998, and have two minor children. To their credit, they were able to reach a comprehensive agreement concerning the legal and physical custody of their children. In light of the parties' custody agreement, essentially two issues remained for the circuit court to decide: Ms. Wasyluszko's requests for a monetary award and a contribution toward her attorney's fees. As we will discuss in more detail *infra*, at the time of the divorce, Mr. Wasyluszko owned, in his sole name, various retirement and non-retirement accounts with an aggregate value of slightly less than two million dollars. Mr. Wasyluszko claimed that all or part of the funds in various accounts constituted non-marital property. The court ultimately agreed that two accounts—Fidelity Funds #3334 and Touchstone Investments #5992, collectively worth approximately $116,000—were exclusively Mr. Wasyluszko's non-marital property. That determination is not at issue in this appeal. However, relevant to this appeal, the court determined that all funds in four other accounts—Fidelity 403(b), Janus Henderson, DWS Equity Fund, and Fidelity IRA #3342—constituted marital property and, accordingly, could be

considered for equitable distribution via a monetary award.  The court prepared a "Marital Property Schedule," which it incorporated by reference in its bench opinion, that identified and valued each item that it determined to be marital property:

| Marital Property | Title | Value | Husband | Wife |
|---|---|---|---|---|
| 1. CGM Funds Roth IRA #5254 | H | $9,144 | $9,144 | |
| 2. CGM Roth IRA #0803 | H | $9,137 | $9,137 | |
| 3. CGM Funds IRA #833 | W | $1,995 | | $1,995 |
| 4. CGM Funds IRA #5428 | W | $1,188 | | $1,188 |
| 5. Jackson IRA #9255 | W | $40,865 | | $40,865 |
| 6. Fidelity Roth IRA #2233 | H | $50,037 | $50,037 | |
| 7. Edelman Financial IRA #0807 | H | $16,341 | $16,341 | |
| 8. 2016 Hyundai | W | $11,706 | | $1,137[1] |
| 9. 2 Weyanoke Ct. | H | $39,631 | $39,631 | |
| 10. Fidelity BSO Retirement 403B | H | $1,403,889 | $1,403,889 | |
| 11. Fidelity Funds IRA #3342 | H | $196,028 | $196,028 | |
| 12. Buffalo Funds #9758 | H | $35,957 | $35,957 | |
| 13. Janus Henderson #1398 | H | $83,887 | $83,887 | |
| 14. DWS Equity Fund | H | $27,343 | $27,343 | |
| 15. AFME Pension | H | If, as, when | | |
| **TOTAL** | | | **$1,871,394** | **$45,185** |

After considering the factors enumerated in Section 8-205(b) of the Family Law Article, the court granted Ms. Wasyluszko a monetary award of $840,000.

---

[1] The $1,137 figure represented the value of the 2016 Hyundai less $10,569 indebtedness on the vehicle.

In this timely appeal, Mr. Wasyluszko contends that the court erred in determining that the four accounts mentioned above constituted marital property in their entirety because the evidence demonstrated that a portion of each account is directly traceable to his pre-marital contributions. He therefore asks us to vacate the $840,000 monetary award, as well as the court's $15,000 attorney's fee award in favor of Ms. Wasyluszko.

## DISCUSSION

I.  THE MONETARY AWARD MUST BE VACATED BECAUSE THE COURT ERRED IN FINDING THAT THREE OF MR. WASYLUSZKO'S ACCOUNTS WERE ENTIRELY MARITAL PROPERTY

Because the focal point of this appeal involves the court's determination that four of Mr. Wasyluszko's accounts were entirely marital property, we begin our analysis with the relevant statute, Md. Code (1984, 2019 Repl. Vol.), § 8-201(e) of the Family Law Article ("FL"), which defines marital property as follows:

(e) (1)  "Marital property" means the property, however titled, acquired by 1 or both parties during the marriage.

(2)  "Marital property" includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement.

(3)  Except as provided in paragraph (2) of this subsection, "marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

3

"Ordinarily, it is a question of fact as to whether all or a portion of an asset is marital or non-marital property. Findings of this type are subject to review under the clearly erroneous standard embodied by Md. Rule 8-131(c)[.]" *Collins v. Collins*, 144 Md. App. 395, 408–09 (2002) (quoting *Innerbichler v. Innerbichler*, 132 Md. App. 207, 229 (2000)). We review the ultimate decision to grant a monetary award for an abuse of discretion. *Abdullahi v. Zanini*, 241 Md. App. 372, 407 (2019). We shall separately examine each of the four accounts in dispute.

### A. Baltimore Symphony Orchestra 403(b) Account

Through his employment with the Baltimore Symphony Orchestra ("BSO"), Mr. Wasyluszko participated in a retirement savings plan BSO sponsored pursuant to 26 U.S.C. § 403(b). Mr. Wasyluszko produced evidence that as of July 31, 1998 (the account statement immediately preceding his August 22, 1998 marriage), the BSO 403(b) plan was worth $107,690.04. This $107,690.04 valuation consisted of two components:

| | | |
|---|---|---|
| Fidelity Contrafund | 1,290.380 shares @ $54.79 = | $70,699.92 |
| Fidelity Low Priced Stock | 1,429.846 shares @ $25.87 = | $36,990.12 |

It is this evidence of Mr. Wasyluszko's pre-marital contributions to the BSO 403(b) plan that forms the basis of his non-marital property claim.

There is no dispute that at the time of trial the BSO 403(b) account had substantially increased in value to $1,403,889.13:

4

| | | |
|---|---|---|
| Contrafund | 64,157.905 shares @ $12.50 = | $801,973.81 |
| Low Priced Stock | 12,563.459 shares @ $47.91 = | $601,915.32 |

In its bench opinion, the court made the following findings concerning the BSO 403(b) plan:

> Another one of the significant assets is the Fidelity BSO Retirement [403(b)] account. The current value provided by the parties is one million four hundred three thousand eight hundred and eighty-nine dollars.
> Mr. Wasyluszko established that account prior to the marriage. The value of the account as of the date of marriage was $107,690. Employee contributions during the marriage were $224,074.
> There were dividends and interest paid during the marriage, those amounts have been provided, they added up to $587,768.
> The total contributions during the marriage were $811,842, that includes not only employee contributions but dividends and interest paid during that time.

Mr. Wasyluszko, purporting to use a "source of funds" theory, argued that twelve percent of the 403(b) plan was non-marital property. He reached that conclusion by using the pre-marital value of the account ($107,690) as the numerator and the sum of all non-marital and marital contributions, including dividends and interest, ($919,532) as the denominator.[2] Mr. Wasyluszko makes the same argument on appeal.

In rejecting Mr. Wasyluszko's claim that part of the BSO 403(b) account constituted his non-marital property, the court concluded that "the funds are not directly traceable to a non-marital source" because "[t]he funds . . . have been commingled between the

---

[2] This $919,532 does not account for changes in the value of shares during the marriage.

5

premarital and post-marital contributions and dividends and interest earned on the premarital and post-marital contributions and are, therefore, entirely marital property."

Although we concur with the circuit court's rejection of Mr. Wasyluszko's source of funds analysis,[3] we nevertheless hold that the court erred in characterizing the BSO 403(b) account as wholly marital property. Mr. Wasyluszko produced documentation showing every contribution, dividend, and capital gain accumulated in the BSO 403(b) account between August 1998 and September 2018.[4] Significantly, with a minor exception, the shares in the BSO 403(b) account only *increased* during the twenty-year period between 1998 and 2018.[5] Accordingly, the records verify that, even though the number of shares dramatically increased during the marriage, Mr. Wasyluszko still owned

---

[3] Mr. Wasyluszko's source of funds theory as applied to the 403(b) plan and the other accounts is inherently flawed. As to the 403(b) plan, Mr. Wasyluszko's theory used the gross pre-marital value of the account ($107,690) as a static numerator without regard to the substantial fluctuations in the dollar value per share over the course of twenty years. Moreover, Mr. Wasyluszko's theory failed to account for his regular purchase of shares during the marriage that reflected a distinct share price and concomitant number of shares for each transaction. The example the Court of Appeals provided in *Grant v. Zich*, 300 Md. 256, 276, n.9 (1984), applying the source of funds theory to a parcel of real property is not applicable to the investments in this case where there are multiple purchases of shares over many years, each with its unique price per share and number of shares acquired. The instant case is further complicated by dividend and interest reinvestments in the accounts that are related to both marital and non-marital shares. Nevertheless, we do not rule out the possibility that a similar theory could prevail if supported by a more sophisticated analysis and expert testimony, but no such evidence was presented here.

[4] Mr. Wasyluszko stopped making employee contributions to the BSO 403(b) account after the *pendente lite* hearing in 2014.

[5] The only occasion when the number of shares decreased was when Fidelity imposed service fees on the Contrafund portion of the account, amounting to a total of 8.283 shares during the marriage.

the original 1,290.380 Contrafund shares and 1,429.846 Low Priced Stock shares from before the marriage. To be sure, the values of those shares fluctuated during the twenty-year marriage, as reflected in the account statements, but the number of shares never decreased.[6] In short, Mr. Wasyluszko's pre-marital Contrafund and Low Priced Stock shares remained in the account at the time of divorce.

In summary, the court properly valued the BSO 403(b) account at $1,403,889, which consisted of the following:

| | | |
|---|---|---|
| Contrafund | 64,157.905 shares @ $12.50 = | 801,973.81 |
| Low Priced Stock | 12,563.459 shares @ $47.91 = | 601,915.32 |
| | Total Value | $1,403,889.13 |

Using the per-share values at the time of divorce, we calculate the value of Mr. Wasyluszko's non-marital shares:

| | | |
|---|---|---|
| Contrafund | 1,290.380 shares @ $12.50 = | 16,129.75 |
| Low Priced Stock | 1,429.846 shares @ $47.91 = | 68,503.92 |
| | Total Non-Marital Value | $84,633.67 |

Our analysis is consistent with *Wilen v. Wilen*, 61 Md. App. 337, 348–49 (1985) (holding that stock splits directly traceable to husband's pre-marital stock are non-marital).

On remand, the court should appropriately adjust its "Marital Property Schedule"

---

[6] Mr. Wasyluszko does not contend that the dividend and interest reinvestment accumulations in any of the accounts are non-marital.

and "Andrew Wasyluszko's Schedule of Non-Marital Property" concerning the BSO 403(b) account to reflect Mr. Wasyluszko's $84,633.67 non-marital share.

## B. Janus Henderson Account

Mr. Wasyluszko's Janus Henderson Non-Retirement Account contains two funds: 1) the Forty Fund and 2) the Research Fund.[7] He opened this account prior to the marriage and the last account statement before the date of marriage (August 3, 1998) verifies that he owned 195.9540 Forty Fund shares and 457.2410 Research Fund shares. Mr. Wasyluszko produced documentation verifying every transaction for the Forty and Research Funds from January 1996 to December 2017. The parties stipulated that the only contributions Mr. Wasyluszko made during the marriage were $50.00 per month to each account from September 3, 1998 to April 3, 2002. The court found that Mr. Wasyluszko established the Janus Henderson account prior to the marriage, that the account was worth $18,155 as of the date of marriage, and that Mr. Wasyluszko made $4,300 in contributions to the account during the marriage. At the time of the divorce, the account was valued at $83,887. Again utilizing a source of funds theory, Mr. Wasyluszko contended that 81% of the account value, or $67,948, constituted his non-marital property.[8]

---

[7] When Mr. Wasyluszko opened this account, the two funds were known as the "Twenty Fund" and the "Mercury Fund." There is no contention that the funds' name changes have any bearing on whether the account is marital or non-marital.

[8] Mr. Wasyluszko used the pre-marital value of $18,155 as the numerator and $22,455 ($18,155 plus $4,300) as the denominator to support his claim that 81% of the account was non-marital. As we explained in footnote 3 regarding the BSO 403(b) account, Mr. Wasyluszko's source of funds theory for the Janus Henderson account is similarly flawed.

The court determined that the entire Janus Henderson account, consisting of the Forty and Research Funds, constituted marital property. As with the BSO 403(b) account, we hold that the court erred. Our meticulous review of the Forty Fund and Research Fund account statements covering a period exceeding twenty years unequivocally demonstrates that Mr. Wasyluszko's share balances never decreased during the entire term of the marriage. Thus, even though the number of shares dramatically increased over the course of the marriage by virtue of his marital contributions and income reinvestment, it is clear that Mr. Wasyluszko still owned at the time of divorce the 195.9540 Forty Funds shares and 457.2410 Research Funds that he owned on August 3, 1998 (prior to marriage). Similar to the BSO 403(b) account, the value of the shares in each fund fluctuated, but the gross number of shares never decreased.

In summary, the court properly valued the Janus Henderson account at $83,887, but using the per-share values at divorce, we determine the non-marital value of Mr. Wasyluszko's shares as of the date of divorce as follows:

| | | |
|---|---|---|
| Forty Fund | 195.9540 shares @ $35.05 = | 6,868.19 |
| Research Fund | 457.2410 shares @ $49.96 = | 22,843.76 |
| Total Non-Marital Value | | $29,711.95 |

Again, on remand the court should adjust its marital and non-marital property schedules to reflect Mr. Wasyluszko's $29,711.95 non-marital interest in the Janus Henderson account.

9

## C. DWS Equity Fund

We employ a similar analytical template to Mr. Wasyluszko's DWS Equity Fund, although the evidence concerning that fund reflects its own unique transactions. The parties stipulated that as of the date of the marriage, Mr. Wasyluszko owned 350.8280 shares. On August 3, 1998, each share was worth $23.20; thus, at the time of the marriage, the account was worth $8,139.

The parties further stipulated that Mr. Wasyluszko contributed a total of $1,000 to the DWS Equity Fund after the marriage, represented by the following five $200.00 contributions between September 1998 and January 1999:

| | | |
|---|---|---|
| 9/3/98 | 200.00 | (12.5630 shares) |
| 10/5/98 | 200.00 | (11.8980 shares) |
| 11/3/98 | 200.00 | (10.1370 shares) |
| 12/3/98 | 200.00 | (10.5820 shares) |
| 1/4/99 | 200.00 | (11.3310 shares) |
| **TOTALS** | **$1,000.00** | **(56.511 shares)** |

The account statements show dividend and income reinvestment accretions in the account until December 2014. There is a gap in the records between January 2015 and November 2017, but a December 21, 2017 entry shows that the account had approximately the same number of shares in December 2017 as it did in December 2014 (from the documentation provided, the small increase in shares was likely due to continued dividend and income reinvestment). Mr. Wasyluszko never made any withdrawals from this account during the

10

marriage. Because of inactivity, the account was closed in October 2018 and the proceeds of $28,444.25 (1,101.210 shares @ $25.830 per share) were remitted to the State treasury (apparently Mr. Wasyluszko may reclaim the funds from the State).

From the stipulated evidence, we know that Mr. Wasyluszko owned 350.8280 DWS Equity Funds "non-marital" shares prior to the marriage and that he purchased 56.511 "marital" shares during the immediate five months after the marriage. Moreover, after the last $200.00 contribution in January 1999, Mr. Wasyluszko owned 423.0380 shares. Simple math reveals that, as of January 1999, the account had 15.699 shares that cannot clearly be designated as marital or non-marital:

| | |
|---|---|
| Total shares as of January 1999 | 423.038 |
| Minus: Mr. Wasyluszko's non-marital shares | - 350.828 |
| Minus: Mr. Wasyluszko's marital shares from contributions | - 56.511 |
| **Balance** | **15.699** |

Because there is insufficient evidence to prove how many of the 15.699 shares were directly traceable to Mr. Wasyluszko's pre-marital shares, we shall presume that they are marital in nature.

Based on this evidence, we conclude that 350.8280 of the 423.0380 shares, or 82.9%, constituted Mr. Wasyluszko's non-marital property as of January 1999. Because there have been no further monetary contributions to or withdrawals from the DWS Equity Fund since January 1999, we readily conclude that 82.9% of the $28,444.25, or $23,580.28,

11

remitted to the State is Mr. Wasyluszko's non-marital property.[9] The court therefore erred in characterizing the entire DWS Equity Fund as "marital" and, as with the BSO 403(b) and Janus Henderson accounts, the court on remand should adjust its marital and non-marital property findings accordingly.

### D. Fidelity IRA #3342

As we shall explain, the Fidelity IRA #3342 account presents a more complicated account history. As with the other accounts, Mr. Wasyluszko produced evidence showing that shortly before the marriage, the Fidelity IRA #3342 account was worth $32,711.74. This $32,711.74 valuation consisted of two components:

| | | |
|---|---|---|
| Contrafund | 516.703 shares @ $47.84 = | $24,719.07 |
| Low Priced Stock | 394.116 shares @ $20.28 = | $7,992.67 |

Unlike the other accounts, there are significant gaps in the documentary evidence concerning this account. Those gaps in documentary evidence were: July 15, 2005, through June 30, 2008; November 1, 2008, to December 31, 2008; January 1, 2010, to December 31, 2010; and January 1, 2012, to May 31, 2019. Nevertheless, the parties stipulated that Mr. Wasyluszko made no contributions to the account after January 1, 2009. Therefore, the only period of time during which Mr. Wasyluszko may have made

---

[9] Mr. Wasyluszko argued that 89% of this account was non-marital by utilizing the pre-marital value of $8,139 as the numerator and $9,139 ($8,139 plus $1000 in marital contributions) as the denominator. As with the BSO 403(b) and Janus Henderson accounts, we reject Mr. Wasyluszko's source of funds theory for this account.

contributions to the account during the marriage was between July 15, 2005, and the end of 2008.

On July 14, 2005, the Fidelity IRA #3342 account was worth $72,143.10:

|  |  |  |
| --- | --- | --- |
| Contrafund | 756.210 shares @ $60.18 = | $45,508.72 |
| Low Priced Stock | 632.195 shares @ $42.13 = | $26,634.38 |

By January 1, 2009, the account value had decreased, though the number of shares increased:

|  |  |  |
| --- | --- | --- |
| Contrafund | 924.866 shares @ $45.26 = | $41,859.44 |
| Low Priced Stock | 927.242 shares @ $23.12 = | $21,437.84 |

These documents reveal an unaccounted-for increase after July 14, 2005, of 168.656 shares in Fidelity Contrafund and 185.444 shares in Fidelity Low Priced Stock. [10] Adding to the confusion regarding this account, when his attorney asked him whether he made contributions to this account during the marriage, Mr. Wasyluszko responded, "I believe so." To be sure, Mr. Wasyluszko later recanted his testimony on this point. But during closing argument, Mr. Wasyluszko's counsel told the court that "the contributions during the marriage was [sic] $14,454." When the court pressed further on this point, Mr. Wasyluszko's counsel advised the court that the increase in the number of shares in the

---

[10] A statement from September 2008 shows an increase of 109.603 shares in Fidelity Low Priced Stock attributable to dividend reinvestment. We subtracted these shares from the 295.047-share difference from July 14, 2005, to January 1, 2009, arriving at a total of 185.444 shares.

13

account between July 2005 and January 2009 equated to $14,454 and suggested that this differential in value would be the "best way" to determine "the marital contribution." The court was clearly entitled to rely on counsel's representation that Mr. Wasyluszko contributed $14,454 in marital funds to the account between July 2005 and January 2009.

Mr. Wasyluszko's non-marital claim in the Fidelity IRA #3342 was effectively vitiated by a June 2019 account statement produced by Ms. Wasyluszko that showed that Mr. Wasyluszko had withdrawn $3,000 from the Fidelity Low Priced Stock fund in June 2019 (reducing the account by 61.716 shares), and more importantly, had withdrawn an additional $30,000 from the #3342 account at some point earlier in 2019. Neither party produced evidence to verify whether the $30,000 was withdrawn from the Contrafund or the Low Priced Stock fund, a fatal blow to Mr. Wasyluszko's non-marital claim to this account because the court would be forced to speculate whether the $30,000 withdrawal reduced marital shares, non-marital shares, or a combination of both.

In summary, there was sufficient evidence for the court to conclude that the Fidelity IRA #3342 account contained both marital and non-marital funds. In light of the $30,000 withdrawal from the account in 2019 that was not linked to either the Contrafund or Low Priced Stock fund, the court had no way of determining from which account the withdrawal was made, or how much of that $30,000 (and concomitant shares sold) was "marital" as opposed to "non-marital." Thus, Mr. Wasyluszko failed to prove that any portion of the account was non-marital property. *Richards v. Richards*, 166 Md. App. 263, 276 (2005). The trial court therefore did not err in characterizing this account as entirely marital.

14

**Conclusion**

As we have explained, we must vacate the monetary award and remand for the circuit court to adjust both its "Marital Property Schedule" and "Andrew Wasyluszko's Schedule of Non-Marital Property" to conform to the determinations set forth in this opinion. The court on remand must then determine "'if the division of marital property according to title would be unfair,' and if so, it 'may make a monetary award to rectify any inequality created by the way in which property acquired during marriage happened to be titled.'" *Abdullahi*, 241 Md. App. at 405–06 (quoting *Flanagan v. Flanagan*, 181 Md. App. 492, 519–20 (2008)).[11]

II.    THE COURT WAS NOT REQUIRED TO SPECIFICALLY EXPLAIN HOW ITS MONETARY AWARD RELATED TO THE FL § 8-205 FACTORS

Although we are vacating the monetary award, we will discuss Mr. Wasyluszko's argument that the court was required to explain how its "consideration of the [FL § 8-205] factors resulted in an award amount of $840,000."

When a party requests a monetary award, a trial court must complete a three-step process before determining whether to grant such an award. First, the court must categorize each disputed item of property as marital or non-marital. *Abdullahi*, 241 Md. App. at 405 (citing *Flanagan*, 181 Md. App. at 519). "Second, the court must determine the value of all marital property." *Id.* (citing *Flanagan*, 181 Md. App. at 519). Finally, the court "'must decide if the division of marital property according to title would be unfair,' and if so, it

_____

[11] Of course, the court should also review its previous findings regarding the FL § 8-205(b) factors prior to making any new monetary award.

15

'may make a monetary award to rectify any inequality created by the way in which property acquired during marriage happened to be titled.'" *Id.* at 405–06 (quoting *Flanagan*, 181 Md. App. at 519–20). As part of this final step, the court must consider the eleven factors enumerated in FL § 8-205(b):

> (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
>
> (2) the value of all property interests of each party;
>
> (3) the economic circumstances of each party at the time the award is to be made;
>
> (4) the circumstances that contributed to the estrangement of the parties;
>
> (5) the duration of the marriage;
>
> (6) the age of each party;
>
> (7) the physical and mental condition of each party;
>
> (8) how and when specific marital property or interest in property described in subsection (a)(2) of this section, was acquired, including the effort expended by each party in accumulating the marital property or the interest in property described in subsection (a)(2) of this section, or both;
>
> (9) the contribution by either party of property described in § 8-201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;
>
> (10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and
>
> (11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in property described in subsection (a)(2) of this section, or both.

Mr. Wasyluszko does not argue that the trial court failed to consider these factors. Indeed,

16

we commend the court for its extensive review of the statutory factors. *Cf. Imagnu v. Wodajo*, 85 Md. App. 208, 221 (1990) ("[I]n making a monetary award, the chancellor need not enunciate every factor he considered on the record, but must at least state on the record that he considered the required factors in making his decision." (citing *Randolph v. Randolph*, 67 Md. App. 577, 585 (1986))).

Instead, Mr. Wasyluszko argues that the court abused its discretion by "fail[ing] to provide an explanation as to how [its] consideration of the enumerated factors resulted in an award amount of $840,000." He further argues that the court "abused its discretion by awarding a monetary award amount without explaining how the amount was calculated and how that calculation relates to the enumerated factors."

Mr. Wasyluszko cites no legal authority to support his contention that a court must explain how it calculated the monetary award. Ms. Wasyluszko, however, has directed us to two instructive cases: *Long v. Long*, 129 Md. App. 554 (2000), and *Flanagan v. Flanagan*, 181 Md. App. 492 (2008), both of which involved large disparities in the distribution of marital property between the parties.

In *Long*, this Court did not find any error in the chancellor's factual findings, but we did find "the bottom line award . . . to be in error." 129 Md. App. at 575. The chancellor expressly considered each of the FL § 8-205(b) factors, and, "[w]here the facts were controverted, the chancellor generally found Wife's evidence more credible than that of Husband[.]" *Id.* at 577. However, despite the "vast chasm between Husband's and Wife's titled assets and the significant accrual of marital assets over the ten-year period of marriage, . . . the chancellor nonetheless awarded only $225,000 to Wife, or 19.8 percent

17

of the marital assets." *Id.* at 575. We noted that "the monetary award tilt[ed] lopsidedly in favor of Husband" and remanded the award due to the chancellor's failure "to give adequate force to his own findings." *Id.* at 575, 578.

In *Flanagan*, we vacated the monetary award "[b]ecause the circuit court did not adequately explain the basis for its monetary award, and because the award resulted in appellee's entitlement to almost 90% of the value of the marital property[.]" 181 Md. App. at 522. We noted that the monetary award would have effectively granted the appellee the entire value of the marital home, and overall, the award was "startlingly large in light of the total value of the marital property." *Id.* at 525. We calculated that the appellee would retain 86.7% of the marital property, and "the court did not explain the enormous percentage on the basis of appellant's conduct leading to the parties' estrangement, or indeed on any particular basis." *Id.* at 526–27. We concluded that "the sizeable, unexplained disparity resulting from the monetary award compel[led] us to vacate the award." *Id.*

Our research has uncovered no other cases discussing the calculation of the monetary award itself. In both *Long* and *Flanagan*, the court erred because it failed to explain or justify a monetary award that resulted in a substantial disparity in the distribution of marital property.

Here, based on the court's findings concerning marital and non-marital property, the $840,000 monetary award resulted in Mr. Wasyluszko retaining 54% of the marital

18

property and Ms. Wasyluszko retaining 46%.[12] Not only is this not a sizeable disparity, but the disparity actually favors Mr. Wasyluszko. The award here does not create such a lopsided result that a specific explanation of the court's calculation is needed beyond consideration of the FL § 8-205(b) factors. "A chancellor is not required to articulate every step in his thought processes. A judge is presumed to know the law and to properly apply it. That presumption is not rebutted by mere silence." *Imagnu*, 85 Md. App. at 221 (quoting *Bangs v. Bangs*, 59 Md. App. 350, 370 (1984)). Though we vacate the monetary award due to errors in determining Mr. Wasyluszko's non-marital funds in three accounts as discussed above, we perceive no abuse of discretion in the court's failure to fully enunciate how its consideration of the statutory factors resulted in the particular monetary award in favor of Ms. Wasyluszko.

III.    BECAUSE WE VACATE THE MONETARY AWARD, WE SHALL ALSO VACATE THE AWARD OF ATTORNEY'S FEES

"The factors underlying alimony, a monetary award, and counsel fees are so interrelated that, when a trial court considers a claim for any one of them, it must weigh the award of any other." *Turner v. Turner*, 147 Md. App. 350, 400 (2002). Therefore, by vacating the monetary award, we must also vacate the attorney's fees award for reconsideration in light of any modification to the monetary award on remand. For

---

[12] Of course, we have concluded that the court erred in finding three of Mr. Wasyluszko's accounts to be entirely marital. We refer to the court's findings here for the purpose of demonstrating that the court's division of marital property based on those findings was fairly equal.

purposes of remand, we merely remind the court that the standards governing an award of

attorney's fees in this case are enumerated in FL §§ 7-107 and 8-214.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY CONCERNING MONETARY AWARD AND ATTORNEY'S FEES VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**
